[Nos. H026751, H026887, H027302. Sixth Dist. Aug. 16, 2005.]

SHOLLY TERRY, as Successor Trustee, etc., Plaintiff and Respondent, v. IONE N. CONLAN, Defendant and Appellant.

COUNSEL

Howard Rice Nemerovski Canady Falk & Rabkin, Denis T. Rice, Jerome B. Falk, Jr., John E. Eichhorst, William J. Neddle and Amy Lynne Bomse for Defendant and Appellant.

Carr, McClellan, Ingersoll, Thompson & Horn, Keith P. Bartel, Lori A. Lutzker; The Valdes Law Office and Steven W. Valdes for Plaintiff and Respondent.

OPINION

**RUSHING, P. J.**—The three consolidated appeals discussed in this opinion arise from the settlement of a long, arduous trial over the validity of two competing trust instruments of Garth Conlan. The parties to the dispute are Ione N. Conlan, Garth's widow, and Garth's three adult children from a previous marriage. The first trust instrument, which Ione claims is valid, is an inter vivos trust that Garth executed in 1999 leaving Garth's community property interests to Ione. The second trust instrument was drafted shortly before Garth died in 2001, and left all of his property to his children.

At the conclusion of evidence after 50 days of trial, with the assistance of a settlement judge, the parties reached a settlement of their dispute. However, immediately following the initial agreement, the parties began to disagree about the specific terms of the settlement.

Ultimately, following the children's motion for judgment, the court ordered the settlement enforced on the terms that Ione's claims were not agreed to in the initial May 9, 2003 settlement.

The three appeals present the following issues: in the first appeal, Ione challenges the enforceability of the settlement agreement; in the second appeal, Ione challenges the trial court's order that the trustee, who is one of Garth's children, is permitted to use trust income to pay attorney fees she has incurred in asserting the children's position in the dispute in the first appeal, and any attorney fees and costs incurred in the future as a result of the trustee asserting the children's position in the dispute in the initial appeal; and in the third appeal, Ione asserts that in the event we conclude the settlement agreement is binding, and the judgment should be affirmed, that an independent manager of the largest part of the trust, the Castroville Ranch, should be appointed.

STATEMENT OF THE CASE AND FACTS

Appellant is Ione Conlon (Ione), widow of Garth Conlan (Garth). Respondents are Garth's three adult children from a previous marriage: Shawn Conlan, Tye Conlan and Sholly Terry (Children).

During his life, Garth owned a beachfront home in Capitola worth approximately $4 million, a ranch in Castroville that produced strawberries and other produce worth approximately $5 million, and a ranch in Marin that was used for cattle worth approximately $2.5 million.

At the heart of this dispute is a conflict between the Children and Ione over Garth's 1999 inter vivos trust that left Garth's community property share of his real property to Ione, and a new trust instrument prepared shortly before Garth died that left his real property to the Children.

The first trust is a revocable living trust, the principal assets of which were Garth's interest in the two ranches (1999 Trust). According to the 1999 Trust, Garth was the trustee during his lifetime, and Ione was the successor trustee. This trust provided that upon Garth's death, all tangible personal property and all real property would pass to Ione free of trust. Garth subsequently amended the 1999 Trust on February 22, 2001, revising the definition of " 'disability.' " On February 23, 2001, Ione executed a further amendment to the 1999 Trust making the trust irrevocable and removing the Children as contingent beneficiaries (Second Amendment).[1]

During the time of the amendments of the 1999 Trust in February 2001, Garth was diagnosed with terminal liver cancer, and was told that he had between four days and four months to live.

In April 2001, the Children took Garth to a different lawyer, Robert Temmerman, who prepared a new trust instrument for him (2001 Trust). The 2001 Trust left all of Garth's personal and real property to the Children.

After Garth's death on May 10, 2001, Ione filed a petition to determine the validity of the 1999 Trust and to obtain confirmation that she was the successor trustee. Ione's petition alleged that the 2001 Trust lacked legal

---

[1] Following a motion for summary judgment brought by the Children, the superior court ruled that the Second Amendment to the 1999 Trust making it irrevocable and removing the Children as contingent beneficiaries was invalid, and Ione is not challenging the ruling on appeal (see discussion, *post*).

force, because the 1999 Trust was made irrevocable by the Second Amendment (see fn. 1, *ante*). In the alternative, Ione asserted that even if the 1999 Trust was not irrevocable, the 2001 Trust was not valid because it did not reflect Garth's intent and was procured through undue influence and duress.

Garth's daughter, Sholly Terry (Sholly) filed an alternative petition, asserting the 2001 Trust was valid, and sought compensatory and punitive damages for fraud, financial elder abuse and breach of fiduciary duty. The petition also alleged that (1) the Second Amendment to the 1999 Trust was invalid, because it was unilaterally drafted by Ione; (2) Ione refused to grant Garth's requests to review documents containing the 1999 Trust and send documents to Sholly; (3) that as a result of Ione's actions, Garth retained the services of a different lawyer to draft an amendment to the 1999 Trust; and (4) on April 11, 2001, Garth executed the 2001 Trust.

The Children filed two motions for summary adjudication prior to trial. The first sought a determination that the Second Amendment to the 1999 Trust was invalid as a matter of law on the ground that it was only signed by Ione, who was not authorized under the 1999 Trust to execute an amendment with Garth acting as trustee. The trial court granted this motion, ruling that the Second Amendment to the 1999 Trust was invalid as a matter of law. Ione does not challenge this ruling on appeal.

The second motion for summary adjudication filed by the Children related to certain of Ione's affirmative defenses to their petition.

The case proceeded to a court trial, which lasted 50 days. During the course of the trial, the parties met periodically with Judge Catherine Gallagher to conduct settlement discussions.

On Friday May 9, 2003, the parties rested their cases, and closing arguments were scheduled for the following Monday. That morning, the parties again met with Judge Gallagher to discuss the possibility of settlement.

At 6:00 p.m. on May 9, 2003, after the parties met with their respective attorneys, Judge Gallagher stated the terms of what she described as "an agreement that I believe both sides have reached." Judge Gallagher stated: "First and foremost, everyone is going to cooperate to obtain the most favorable tax benefits that everybody can under the framework of this settlement," and "[i]f I misstate something and mischaracterize it that is incorrect, it is going to be stated most beneficial to taxes."

Judge Gallagher stated the terms of the settlement as follows:

(1) With respect to the Capitola and Marin Ranch real properties: Ione would receive Capitola; the Children would receive the Marin Ranch.

(2) With respect to the Castroville Ranch real property: "The Castroville property is going to be structured so [as] to take advantage of taxes so that Ione receives . . . [t]he income from it," being "structured as a [QTIP] pursuant to IRS codes;" and the remaindermen on the Castroville Ranch would be the Children.

(3) The Castroville Ranch would "be run for seven years by an independent trustee or labeled a manager whatever labeling is appropriate . . . ."

(4) Ione would pay the Children $2,675,000 in installments over two years.

(5) "All future trustees expenses such as appraisal, trustee's fees—of course the trustee is going to incur attorney's fees—are to be paid from the trust."

(6) Shawn Conlan was to reside rent-free on the Castroville Ranch for as long as Ione was alive.

(7) Temmerman, counsel for Sholly in her capacity as trustee was appointed to draft the settlement, with each side contributing approximately $5,000 for his fees.

After iterating the terms of the settlement, Judge Gallagher stated: "this again is a judicially supervised settlement agreement. It cannot be changed once you leave this courtroom."

Following the May 9, 2003 hearing, Temmerman drafted a new trust instrument (the First Settlement Trust), to which Ione expressed numerous objections. Temmerman then drafted a new version of the trust instrument (the Second Settlement Trust).

Steven Valdes, an attorney representing the Children in their individual capacities, drafted and submitted a proposed settlement agreement (the First Settlement Agreement). The First Settlement Agreement included a promissory note for Ione in the amount she owed under the settlement of $2,675,000, to be secured by trust deeds on eight of Ione's separate properties.

Ione refused to sign the promissory notes and deeds of trust. The Children in turn filed a motion to enter judgment on the First Settlement Agreement and the Second Settlement Trust. Before the hearing on the motion, the

Children withdrew the Second Settlement Trust, and submitted a third instrument (the Third Settlement Trust.)

In September 2003, Judge Gallagher heard the Children's motion to enter judgment, and held that the parties had reached an enforceable agreement on May 9, 2003. Judge Gallagher also rejected the Children's First Settlement Agreement as not accurately reflecting the agreement reached on May 9, 2003. Judge Gallagher further ordered the parties to come to an agreement on the terms, and in the event they could not, they should file separate proposed settlement documents to the court.

The parties could not agree, and ultimately filed separate forms of settlement agreements and trust instruments. The Children submitted a Second Settlement Agreement and the Third Settlement Trust. Ione submitted a proposed "Qualified Terminable Interest Property Trust" (QTIP Trust), that called for a cotrustee to manage the Castroville Ranch for seven years.

On October 9, 2003, the court entered judgment, the terms of which were as follows:

(1) With respect to the Marin and Castroville Ranches, Ione was to execute grant deeds transferring all of her rights in both properties to Sholly as trustee.

(2) Sholly was appointed trustee of the Castroville Ranch.

(3) The Castroville Ranch was to be operated as a trust asset during Ione's lifetime, with the entire property distributed to the Children upon Ione's death.

(4) Ione was to pay Sholly as trustee the amount of $2,675,000 in installments over two years.

(5) Ione was to pay Temmerman the amount of $7,588 in fees for drafting the trust, and the remainder of his fees were to be paid out of Ione's trust income from the Castroville Ranch.

(6) Ione was granted the income from the Castroville Ranch during her life, reduced by the payment of all future trust expenses, including the trustee's attorney fees.

The new trust instrument that was incorporated into the judgment entered on October 9, 2003, was entitled "The Court-Approved Second Amendment and Restatement of the Garth G. Conlan Revocable Living Trust Dated February 2, 1999."

Ione filed a notice of appeal from the judgment on November 10, 2003. (Appeal No. 1-H026751.)

In September 2003, Sholly as trustee brought a petition for instructions seeking authorization to pay $145,363.32 in attorney fees out of trust income. The fees petition also sought approval of the court to pay any attorney fees incurred by the trustee to defend against the appeal of judgment from trust income.

In November 2003, the trial court issued an order approving payment of all attorney fees that will be incurred to defend against the appeal of judgment entirely from trust income.

Ione filed a notice of appeal from the order granting petition for instructions regarding administration of trust entered on November 24, 2003, on December 29, 2003 (Appeal No. 2-H026887).

On December 4, 2004, the Children filed an application for an order appointing an independent manager for the Castroville Ranch. Ione filed an opposition and cross-petition. Ultimately, the trial court entered an order regarding the management of the Castroville Ranch as follows:

"3. The court finds that the job duties of the manager shall be . . . to assist the Trustee. The job of the manager shall be such tasks and assignments as the Trustee may choose to assign the manager, including, but not limited to, locking and unlocking gates, protecting equipment from theft and vandalism, monitoring reservoirs and irrigation schedules, monitoring tenants' activities, fire prevention, equipment maintenance and repair, irrigation system repair, cleaning reservoirs and ranch land, and road repair and maintenance.

"4. The duties of the manager shall not include any of the powers granted to [Sholly] as Trustee by the Probate Code. Those powers are granted to [Sholly], as trustee, both by virtue of her position as trustee and expressly by the Court Approved Second Amendment and Restatement of the Garth G. Conlan Revocable Living Trust dated February 2, 1999, as amended, at page 4, paragraph 6.3 said trust having been incorporated into the judgment of October 9, 2003."

Ione filed a notice of appeal from the order re application for an independent manager entered on February 19, 2004, on April 7, 2004 (Appeal No. 3-H027302).

DISCUSSION

Ione brings three appeals related to the underlying litigation involving the dispute she has with the Children regarding the validity of various trust instruments. Each of the appeals is discussed separately.

*Appeal No. 1-H026751*

The issue in this first appeal is whether the settlement agreement entered into between the parties on May 9, 2003, is enforceable. On the Children's motion to enter judgment pursuant to the settlement, the trial court held that it was, and entered judgment accordingly.

It should be noted at the outset that we are not persuaded by the Children's argument that Ione is equitably estopped from bringing this appeal, because they detrimentally relied on Ione's agreement to the settlement. Although the Children may have expended resources and changed their position in reliance on the settlement as they assert they did, they did not do so in ignorance of the true state of the facts, as is required for the doctrine of equitable estoppel. (*Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 890 [3 Cal.Rptr.2d 597].) The record demonstrates that very shortly after the settlement discussions on May 9, 2003, Ione objected to the settlement. Therefore, the Children were fully aware that Ione challenged the settlement, and cannot now claim she is equitably estopped from challenging the entry of judgment on the settlement in this appeal.[2]

In ruling on a motion to enter judgment the trial court acts as the trier of fact, determining whether the parties entered into a valid and binding settlement. (*Kohn v. Jaymar-Ruby, Inc.* (1994) 23 Cal.App.4th 1530, 1533 [28 Cal.Rptr.2d 780].) Trial judges may consider oral testimony or may determine the motion upon declarations alone. (*Fiore v. Alvord* (1985) 182 Cal.App.3d 561, 563 [221 Cal.Rptr. 400].) When the same judge hears the settlement and the motion to enter judgment on the settlement, he or she may consult his memory. (*Richardson v. Richardson* (1986) 180 Cal.App.3d 91, 97 [225 Cal.Rptr. 370].) The standard of review on appeal is whether substantial evidence exists to support the trial court's ruling. (*Fiore v. Alvord, supra*, 182 Cal.App.3d at p. 563.)

In her appeal, Ione claims the agreement entered on May 9, 2003, did not result in an enforceable settlement agreement, because it did not contain all material terms, and the terms it did contain were "too indefinite and left too

---

[2] The Children raise similar arguments in a motion to dismiss the appeal, which we initially denied without prejudice to consider with the merits of the appeal.

many material issues in dispute." The five points that Ione claims are not sufficiently addressed in the settlement agreement, making it invalid are: (1) the management of the Castroville Ranch; (2) the qualification of the trust as a QTIP Trust; (3) the payment of attorney fees for the drafting of the settlement documents; (4) the securing of Ione's fiscal obligations on deeds of trust on her separate properties; and (5) the compensation of Shawn Conlan for services to the Castroville Ranch.

I. *Management of the Castroville Ranch*

The first point upon which Ione asserts the parties did not agree was the management of the Castroville Ranch. There is no question the parties understood and agreed that Sholly would serve as trustee of the ranch. The question is whether she would serve as trustee with an independent manager of the ranch.

The settlement agreement that was reached on May 9, 2003, and placed on the record indicated that the parties contemplated an independent manager of the Castroville Ranch.

Specifically, the colloquy in court was as follows:

The court: "Now, on the Castroville ranch, it is going to be run for seven years by an independent trustee or labeled a manager whatever labeling is appropriate with Sholly Terry to manage the ranch if she so desires in seven years."

Counsel for the Children: "Your Honor, to clarify on that, Sholly Terry being the—will be the trustee of the trust. Sholly Terry being the trustee of the trust and the ranch will be run by an independent manager agreed upon by the parties or third party if necessary."

After this statement, Ione asked whether the trustee was the third party manager, to which Judge Gallagher responded "no," and that Sholly was the trustee and that there would be a "trustee/manager" of the Castroville ranch.

After questions were asked and answered, the court specifically asked Ione if she understood the agreement and the agreement was repeated to her. Ione stated she understood the agreement and that she would be bound by it.

The judge further stated that "there is going to have to be payment [of fees] to an independent manager trustee/manager of the ranch."

These statements among the court and the parties during settlement discussions on May 9, 2003, clearly indicate that the parties contemplated

that: (1) Sholly would serve as the trustee of the Castroville Ranch; and, (2) that there would be an *independent* manager of the Ranch for seven years. However, the iterations of the proposed settlement agreements that occurred after the discussions on May 9, 2003, demonstrate the lack of agreement by the parties on the material term of the management of the Castroville ranch. The First Settlement Agreement stated: "An independent manager shall be hired to manage the Conlan Castroville ranch for a period of up to seven years . . . . After seven years . . . the trustee will be entitled to personally manage the Castroville ranch."

The Second Settlement Trust changed the concept of the independent manager as follows:

"(d) The trustee [Sholly], and only the trustee, shall have all powers necessary or appropriate to carry out the management of such farming and ranching property. . . .

"(e) . . . In order to assist the trustee in the continued operation of the trust's farm and ranch operation . . . the trustee shall employ the services of a manager . . . and the manager shall report to and take direction from no one other than the trustee. If at any time . . . the trustee determines it would be in the best interest of the trust . . . , the trustee shall have the power to terminate the manager's employment . . . ."

After significant wrangling, Judge Gallagher ultimately approved the children's version of the agreement, stating: "Sholly Terry shall be the sole trustee of the Trust. . . . During the first seven years after May 9, 2003, Ms. Terry will be assisted by a manager of the Castroville ranch."

Ione asserts the problem with this provision is that the concept of an independent manager of the Castroville Ranch that was agreed upon during the May 9, 2003 settlement discussions is completely abrogated, substituted by the manager serving at the pleasure of Sholly. Ione further asserts that this provision demonstrates the parties failed to agree on the material settlement term of the management of the Castroville Ranch, making the settlement agreement unenforceable.

## II. *Designation of the Trust as a QTIP Trust*

In addition to her claim that the parties failed to agree on the material term of the independent management of the Castroville Ranch, Ione asserts that a material term of the settlement agreement discussed during the May 9, 2003 session was that the trust would be a QTIP Trust, and therefore, would be framed in a way that is most beneficial for taxes.

In order to qualify as a QTIP trust, the Internal Revenue Code requires that the trust must give the surviving spouse "a qualifying income interest for life." (Int. Rev. Code, § 2056(b)(7)(B)(i)(II).) A surviving spouse with a qualifying interest is "entitled to all the income from the property." (Int. Rev. Code, § 2056(b)(7)(B)(ii)(I).) In addition, the federal tax regulations require that a surviving spouse be given "substantially that degree of beneficial enjoyment of the trust property during her life which the principles of the law of trusts accords a person who is unqualifiedly designated as the life beneficiary of a trust." (Treas. Reg., 26 C.F.R. § 20.2056(b)-5(f)(1) (2005).)

The Treasury Regulations' reference to the principles of the law of trusts include the Uniform Principal and Income Act (the UPAIA). This act, embodied in the Probate Code in California, requires that attorney fees from a "proceeding to construe the trust or to protect the trust or its property," be charged to the principal. (Prob. Code, § 16371, subd. (a)(4).) However, in this case, the trial court adopted the Children's settlement trust, which specifically abrogates the UPAIA, and provides for the payment of all of the trustee's future expenses, including attorney fees payable from trust income.

Ione asserts the trial court's adoption of the Children's settlement trust, including its specific provision abrogating the UPAIA, resulted in a trust that does not qualify as a QTIP Trust. This result is contrary to the settlement discussions on May 9, 2003, and is further evidence that the parties failed to agree on material terms of the settlement.

"At the May 9, 2003 hearing, Judge Gallagher stated on record:First and foremost, everyone is going to cooperate to obtain the most favorable tax benefits that everybody can under the framework of this settlement. [¶] If I misstate something and mischaracterize it that is incorrect, it is going to be stated most beneficial to taxes. [¶] . . . [¶]

". . . The Castroville property is going to be structured so [as] to take advantage of taxes so that Ione receives . . . [t]he income from it. It is structured as a [QTIP] pursuant to IRS codes."

However, contrary to the requirements of a QTIP trust, Judge Gallagher (in approving the Children's settlement trust), held that the trust specifically abrogated the provisions of the UPAIA. Specifically, Judge Gallagher stated: ". . . Notwithstanding the California Uniform Principal and Income Act, the Trustee shall charge trust income with all future expenses of the trustee, including but not limited to the cost of appraisals, reasonable trustee's fees and attorney's fees for the Trustee."

Ione asserts the problem with the trial court's subsequent designation that the trust abrogated the UPAIA is that it can no longer be qualified as a QTIP

trust, subjecting her to substantially more tax liability. Specifically, failure to qualify as a QTIP trust will result in a federal estate tax rate of 55 percent being applied to the Castroville Ranch, reducing her income by more than one half. (Int.Rev. Code, § 2001(c); for decedents dying in 2001.) This, she asserts, is not what she agreed to during the May 9, 2003 settlement discussions.

We are not persuaded by the Children's argument that a QTIP trust was not necessary according to the settlement discussions, and that the agreement was only that the parties would *"attempt* to accomplish [the best possible tax benefits by] creat[ing] a QTIP trust." Although the Children are correct in their assertion that the settlement agreement does not state that it is contingent upon the creation of a QTIP trust, this does not diminish the fact that the parties and the court clearly contemplated the creation of a QTIP to maximize the tax benefits to Ione. The discussions on the record demonstrate to us that the creation of a QTIP was a material term of the agreement, and was not a part of the court approved trust.

### III. *Enforceability of the Settlement Agreement—Motion to Enter Judgment*

■ In evaluating whether the trial court erred in entering judgment in this case, we look to the enforceability of the settlement agreement reached between the parties on May 9, 2003. In particular, we evaluate whether a contract was formed in the settlement agreement. "The fact that the context was one of settlement negotiation, however, has no analytical impact on the question of whether an enforceable contract was ever formed." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 815 [71 Cal.Rptr.2d 265] (*Weddington*).) The principles of contract formation are the same in both the settlement and the nonsettlement context. (See, e.g., Civ. Code, § 1550 et seq.)

Viewing the settlement negotiations that occurred on May 9, 2003, in light of a contract analysis, we note that the negotiations did lead to an agreement between the parties on the goals of the settlement. Among those goals was that Ione would receive the Capitola property, the Children would receive the Marin Ranch, and the Castroville Ranch would be held in trust for the benefit of Ione during her lifetime and the Children after her death. However, the parties' mutual assent to the goals of the settlement in this case is not sufficient to demonstrate the enforceability of the settlement agreement.[3]

---

[3] By this opinion, we do not mean to say that a failure to agree on the means to achieve settlement goals will necessarily cause a settlement agreement to fail. On the contrary, many settlements are reached by an initial agreement on the goals of the settlement. However, agreement to the goals alone may not result in a judicially enforceable settlement agreement.

Here, although the parties agreed to the goals of the settlement, they clearly did not agree to the means of achieving the goals. In this case, the means to achieving the goals were material to the settlement, because they had a significant financial impact on the parties. For example, in regard to the management of the Castroville Ranch, although the parties clearly agreed to the goal that there would be independent management of the ranch, they did not agree on the means of achieving that goal, specifically, whether there would be an independent trustee or a manager, and what specific duties and the extent of power that person would have. This failure to agree to the material means to achieve the goal of the settlement demonstrates the settlement's unenforceability.

 Here, the parties' assenting to the goals of the settlement, without agreeing to the means that were material to the settlement, demonstrates the parties never formed an enforceable contract. The facts clearly show there was no meeting of the minds on material terms, most notably what the meaning of an independent manager of the Castroville Ranch was, and whether the trust should be qualified as a QTIP Trust. This lack of a meeting of the minds on these two material terms is sufficient to demonstrate that no enforceable contract exists; we need not consider Ione's additional contention that there are other material terms to which the parties did not mutually agree.

 This case is similar to *Weddington, supra,* 60 Cal.App.4th 793, in which the court stated: "the law of contracts precludes specific enforcement of a contract when it cannot be determined exactly what terms the parties agreed upon." (*Id.* at p. 801.) In *Weddington,* the parties signed a settlement memorandum that included "significant 'deal points.' " In their memorandum, the parties specifically stated that they "agree[d] to settle and dismiss on the following terms: . . ." (*id.* at p. 799) and went on to describe amounts and dates for payments, and the provisions for transfer of title to specific real properties. The memorandum also called for the creation of a copyright license that was material to both sides. However, subsequent to the settlement discussions, disagreements arose on numerous terms for the copyright, including scope of use, etc. (*Id.* at pp. 801–802.) In order to facilitate the parties' agreement, the settlement judge attempted to select terms for the license that would be " 'consistent with,' " or " 'not inconsistent with,' " the settlement memorandum. (*Id.* at p. 804.) Ultimately, judgment was entered based on the settlement memorandum and the terms selected by the settlement judge.

---

We think the better practice in goals-oriented settlement discussions is to use the services of an independent arbitrator who can specify the details of the means in reaching the goals of the agreement.

The Court of Appeal for the Second District reversed, holding that there was no meeting of the minds on the material terms of the settlement agreement.

Of particular importance to the *Weddington* court was the fact that in their original settlement memorandum, the parties did not specify the material terms. Additionally, the court specifically held that a judge does not have the authority to create material terms of the settlement. (*Weddington, supra,* 60 Cal.App.4th at pp. 810–811.)

We find *Weddington* similar to the present case. Like *Weddington,* the parties here stated that they agreed to settle their dispute, and like *Weddington,* the parties stated specific points or goals of their agreement, such as the management of the Castroville Ranch, and that the trust would be stated in the most beneficial way for tax purposes. Also like *Weddington,* the parties left significant ambiguities in those material terms that demonstrated there was no meeting of the minds. Moreover, Judge Gallagher's attempt to fill in the gaps of the settlement agreement and define the material terms here was similar to the *Weddington* settlement judge's adoption of the terms of the licensing agreement "consistent with" the settlement memorandum. (*Weddington, supra,* 60 Cal.App.4th at p. 804.)

The Children argue *Weddington* is not analogous, because Judge Gallagher did not pick and choose from competing versions of the agreement; rather, she stated her judgments were based on facts that conformed to the settlement as she understood it. Moreover, the Children assert Judge Gallagher entered the judgment in part based on her own recollections of the settlement discussions. While it is true that a judge who hears the settlement and the motion to enter judgment on the settlement may consult his or her memory in ruling on the motion (*Kohn v. Jaymar-Ruby, Inc., supra,* 23 Cal.App.4th at p. 1533), here, the record reflects that Judge Gallagher did not rely on such recollections.[4]

We are not persuaded by the Children's argument that in entering judgment on the settlement agreement, Judge Gallagher simply interpreted the terms of the parties' May 9, 2003 agreement. Here, the May 9, 2003 discussions left ambiguities in the material terms, providing Judge Gallagher with no other option than to fill in the gaps of the agreement to enforce settlement. The court therefore adjudicated differences between the parties rather than settling or interpreting them.

---

[4] In the judgment, Judge Gallagher crossed out proposed language that her finding that the parties had agreed upon the material terms of the settlement was based on her own recollection of the terms, and the court's own recollection of the admissible statements of the parties relating to the terms of the settlement.

We do not find substantial evidence to support the judgment in this case, and find the trial court erred in entering judgment on the settlement.[5]

*Appeal No. 2-H026887*

In Appeal No. 2-H026887, Ione challenges the trial court's order that the trustee is permitted to use trust income to pay attorney fees she has incurred in asserting the Children's position in the dispute in Appeal No. 1-H026751, and any attorney fees and costs incurred in the future as a result of the trustee asserting the Children's position in the dispute in Appeal No. 1-H026751.

"A trustee is entitled to the repayment out of the trust property for the following: [¶] (a) Expenditures that were properly incurred in the administration of the trust. [¶] (b) To the extent that they benefited the trust, expenditures that were not properly incurred in the administration of the trust." (Prob. Code, § 15684.)

■ We review the trial court's order that attorney fees may be payable from trust income under the abuse of discretion standard. (*Estate of Vokal* (1953) 121 Cal.App.2d 252, 260 [263 P.2d 64].) In conducting our review, we are mindful that "[t]he underlying principle which guides the court in allowing costs and attorney[] fees incidental to litigation out of a trust estate is that such litigation is a benefit and a service to the trust." (*Dingwell v. Seymour* (1928) 91 Cal.App. 483, 513 [267 P. 327].)

■ "[A]mong the ordinary powers and duties of a trustee of a private trust are those of doing all acts necessary and expedient to collect, conserve and protect the property of the trust, to maintain and defend the integrity of the trust for the benefit of the beneficiaries and to employ such assistants as may be necessary for said purposes." (*Evans v. Superior Court* (1939) 14 Cal.2d 563, 574 [96 P.2d 107].) If litigation is necessary for the preservation of the trust, the trustee is entitled to reimbursement for his or her expenditures from the trust; however, if the litigation is specifically for the benefit of the trustee, the trustee must bear his or her own costs incurred, and is not entitled to reimbursement from the trust. (See, e.g., *Metzenbaum v. Metzenbaum* (1953) 115 Cal.App.2d 395, 399 [252 P.2d 31].)

The question presented in this case is whether Sholly's participation in this litigation in her role as trustee was necessary to protect the property of the trust.

---

[5] Because we find the settlement is invalid on the ground that it fails to state the material terms, we do not address Ione's alternative arguments that the settlement should be set aside because it required the trial court to reform the trust in violation of California law, and that the settlement is unconscionable.

This case is very similar to *Whittlesey v. Aiello* (2002) 104 Cal.App.4th 1221 [128 Cal.Rptr.2d 742] (*Whittlesey*), in which the Court of Appeal for the Third District considered a related question. In that case, a trust was created that named the decedent's niece as the trustee and primary beneficiary. Later, an amendment was executed that named the decedent's second wife as the trustee and primary beneficiary. The niece challenged the amendment, and the second wife hired an attorney to defend it, claiming that she was acting as the trustee of the trust, and the attorney fees she incurred should be payable from the trust, because they were necessary to protect the trust's assets.

The Court of Appeal disagreed, finding that the heart of "the underlying action was not a challenge to the existence of the trust; it was a dispute over who would control and benefit from it." (*Whittlesey, supra,* 104 Cal.App.4th at p. 1228.) The court found further that whether or not the challenge to the amendment prevailed, "the trust would remain intact." (*Ibid.*)

We see very little difference between the issue in *Whittlesey* and that in the present case. Like *Whittlesey*, here, the disputing parties are competing heirs of Garth's estate. On one side of this dispute is Sholly and her siblings, the children of Garth Conlan, and on the other is Ione. Also like *Whittlesey*, Ione initiated the litigation to establish her rights under the trust. The Children in turn asserted the contrary position that they had rights under the trust. The dispute was, and continues to be, over who will enjoy the benefits and who will control the trust.

In *Whittlesey*, the court concluded that because the dispute between the parties was related to the benefits of the trust, rather than an attack on the validity of the trust itself, "there was no basis for the trustee to have taken other than a neutral position in the contest." (*Whittlesey, supra,* 104 Cal.App.4th at p. 1231.) Therefore, the trustee was not entitled to reimbursement for her attorney fees. The court stated: "[t]o the extent [the attorney] defended the amendment, he was representing the interests of one side of the dispute over the other, not representing the interests of the trust or the trustee." (*Ibid.*)

Here, like *Whittlesey*, Sholly has not taken a neutral interest in this contest, and has consistently represented the interests of one side of this dispute: that of the remaindermen.

The Children assert that *Whittlesey* is inapposite, because here, unlike *Whittlesey*, Ione's initial appeal "seeks to remove assets from the trust, as well as invalidate the entire Court Approved Reformed Trust . . . ." As such, the Children assert, Sholly is entitled to defend the trust, and to pay her attorney fees in doing so from the trust income.

In making their argument that the trust should be charged for attorney fees, the Children rely on *Estate of Duffill* (1922) 188 Cal. 536 [206 P. 42] (*Duffill*), a case cited and distinguished by the court in *Whittlesey*. In *Duffill*, the court stated, "[u]nquestionably, when proceedings are commenced attacking the validity of a trust, it is the right . . . of the trustee to secure legal assistance, and it is equally beyond doubt that the facilities to command such assistance should not be narrowed, if not entirely destroyed, by any such restriction as that compensation for such assistance is wholly dependent upon, and measured by, the degree of success." (*Id.* at pp. 556–557.)

*Duffill* involved a challenge to a testamentary trust in which the trustee largely prevailed. The court indicated that the efforts of the attorneys for the trustee "were in this instance directed to the preservation of the trust in its entirety, a duty imposed upon the trustee, whom they represented, irrespective of whether, if upheld or only partially upheld, the result might be more beneficial to some than to others who are interested therein . . . ." (*Duffill, supra,* 188 Cal. at pp. 554–555.) The court further stated: "The appellant assailed the validity of the entire trust, against which attack it was the duty of the trustee to defend, and which it did defend, with the result that though some of [the challenger's] contentions were sustained, the general *scheme* of the trust was nevertheless preserved. Under such circumstances we can see no good reason for holding that the attorneys for the trustee should not be compensated for the entire service." (*Id.* at p. 555.)

Of particular importance to the court in *Duffill* was the fact that the litigation involved a challenge to the entirety of the trust. In other words, the challenger sought to invalidate the trust through litigation, divesting the trust entirely of its assets. This, the *Duffill* court reasoned, entitled the trustee to reimbursement of attorney fees in seeking to defend the trust itself. (*Duffill, supra,* 188 Cal. at p. 555.)

The Children assert that as in *Duffill*, Ione "assails the validity of the entire Court Approved Reformed Trust," in the initial appeal, and therefore, Sholly should be reimbursed from trust income for her defense of the trust.

While it is true that through her appeal, Ione does challenge the settlement, she does not challenge the existence of the trust, nor does she seek to divest the trust of its property. Ione challenges the settlement instrument, titled: "The Court-Approved Second Amendment and Restatement of the Garth G. Conlan Revocable Living Trust Dated February 2, 1999." This instrument is the embodiment of the settlement of the parties, and is an amendment of the original trust Garth created while he was alive. That trust containing his property will remain intact regardless of the outcome of the appeal.

The Children's argument that Ione's appeal is seeking to void the trust in its entirety is based on the faulty premise that a *trust* is the same as a *trust instrument*. Here, there is no current dispute, nor has there ever been a dispute between the parties that Garth Conlan placed his property in trust while he was alive. The dispute between Ione and the Children is over the validity of the various trust instruments and amendments. The fact that Ione prevails in her appeal of the judgment on the settlement does not divest the trust of its property, nor does it assail the existence of the trust; rather, it demonstrates that the settlement, in the form of an amendment of the trust, is invalid. The trust remains intact, leaving the parties in their original positions prior to the beginning of litigation: with Garth's property held intrust, and a question of which of the trust instruments and amendments is valid.

Sholly has not participated in this litigation as a neutral trustee to defend the trust and protect its assets; rather, she has consistently pursued her own interests and those of her siblings, to the detriment of Ione. As such, she must bear her own costs in this litigation, rather than be reimbursed from the trust.

*Appeal No. 3-H027302*

In this appeal, Ione claims that in the event we affirm the judgment enforcing the settlement, we order an independent manager be appointed to run the Castroville Ranch. Because we reverse the judgment in Appeal No. 1-H026751, Appeal No. 3-H027302 is moot.

### Disposition

In Appeal No. 1-H026751, the judgment is reversed. Costs on appeal are awarded to petitioner, Ione Conlan.

The Children's motion to dismiss Appeal No. 1-H026751 is denied.[6]

In Appeal No. 2-H026887, the trial court's order that the trustee is permitted to use trust income to pay attorney fees incurred by the trustee in asserting the Children's position in the dispute in Appeal No. 1-H026751, and any attorney fees and costs incurred in the future as a result of the trustee asserting the Children's position in the dispute in Appeal No. 1-H026751 is reversed. Costs on appeal are awarded to petitioner Ione Conlan.

---

[6] The requests for judicial notice filed in connection with the motion to dismiss are granted.

In light of our reversal of the judgment in Appeal No. 1-H026751, Appeal No. 3-H027302 is dismissed as moot.

Elia, J., and McAdams, J., concurred.

A petition for a rehearing was denied September 15, 2005.