Filed 5/15/23  Bye v. Mula CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PATRICIA M. BYE, as Trustee, etc.,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>PAUL S. MULA, JR.,<br><br>Defendant and Appellant. | H049808, H049813, H050020,<br>H050040 & H050043<br>(Santa Clara County<br>Super. Ct. Nos. 2006-1-PR-158914<br>& 2012-1-PR-171643) |

Appellant Paul S. Mula, Jr. (Paul) challenges the probate court's orders granting five petitions of Patricia S. Bye, trustee of the Helene Mula Stouky Trust (Stouky Trust) and the Sarah Mula Ogier Trust (Ogier Trust) and conservator of the estate of Helene Mula Stouky.  These orders authorized Bye to retain and pay attorneys to defend the two trusts, Helene Mula Stouky (Helene), Bye, the conservator of Helene's person, the attorneys representing them, those attorneys' law firms, and Bye's sole proprietorship in a federal lawsuit brought against them by Paul.[1]  These orders also authorized Bye to retain and pay attorneys to defend against Paul's appeals from multiple probate court orders.  The last of these orders approved an accounting for the Stouky Trust that included the payment of attorney fees attributable to matters concerning the Ogier Trust.

---

[1] For clarity, we refer to appellant as Paul and to respondents on appeal collectively as Bye.

Paul contends that the probate court abused its discretion in granting Bye's petitions because compensating attorneys defending the trusts and Helene in his federal lawsuit for their representation of any other defendants will not benefit the trusts, is not authorized by the trusts' terms, and will result in a conflict of interest. He also contends that reversal is required for several other reasons and that the use of Stouky Trust funds for attorney fees related to the Ogier Trust does not benefit the Stouky Trust or Helene.

We affirm the orders.

## I. FACTS AND PROCEDURAL BACKGROUND

The Ogier Trust was established by Helene's mother, Sarah Mula Ogier (Sarah Ogier) in 2000. The Ogier Trust expressly authorized the trustee to employ attorneys and to compensate them from the Ogier Trust's assets. The primary beneficiaries of the Ogier Trust were Helene, Paul's uncle, Alan Mula (Alan), and Paul's now-deceased father, Paul Mula, Sr. (Paul Sr.). Helene was originally the trustee of the Ogier Trust. Her share of the Ogier Trust was to be put in a trust for her benefit, and Paul was the beneficiary of that trust if any property remained in it at Helene's death. Sarah Ogier died in 2005.

The Ogier Trust's primary assets were real properties, but Sarah Ogier deeded these properties to Helene, Alan, and Paul Sr. before her death. Paul apparently questioned the validity of those deeds. In 2006, Paul accepted $100,000 from Sarah Ogier's estate in return for a handwritten release stating: "I do hereby waive/release any future interest in any of the real property now held in the names of [Alan, Paul Sr., and Helene] and/or the estate of Sarah Mula Ogier." The release expressly stated that this $100,000 was accepted "as final payment for any and all claims I have against the above parties involved." In March 2006, the probate court issued an order confirming title to these real properties as deeded. Paul received the agreed $100,000 in May 2006 when these real properties were sold.

2

Helene created the Stouky Trust in 1997, and Paul is one of the beneficiaries of the Stouky Trust. The Stouky Trust expressly authorizes the trustee to employ attorneys to advise and assist the trustee and to compensate those attorneys from trust assets. Helene was conserved in 2012, and Bye was appointed conservator of Helene's estate and trustee of the Stouky Trust. In 2013, Bye became the trustee of the Ogier Trust. By 2021, the Ogier Trust's only remaining asset was a brokerage account containing just under $110,000.

In 2013, the probate court issued an order expressly granting Bye authority to commence or defend litigation brought by or against Paul and to utilize Helene's assets and funds from the Stouky Trust to pay litigation expenses for Helene, Bye, the conservator of Helene's person, and any counsel representing them. In 2019, Paul filed multiple appeals from orders concerning the Stouky Trust.[2] In 2020, Paul filed another appeal from an order concerning the Stouky Trust.[3]

In June 2021, Paul filed a federal lawsuit against 10 named defendants and 100 Doe defendants. The defendants named in his original complaint are Helene, the Stouky Trust, Alan, Paul Sr.'s estate, the conservator of Helene's person (Paul's sister, who is also a beneficiary of the Stouky Trust), Bye, Helene's court-appointed attorney, the attorney who drafted both trusts, an attorney whom Paul consulted, and Bye's attorney. Paul's federal lawsuit made allegations concerning the management of both the Ogier Trust and the Stouky Trust, and Paul purported to bring the federal action on behalf of himself and the Ogier Trust.

In August 2021, Bye filed two petitions (one as trustee of the Ogier Trust and one as trustee of the Stouky Trust) seeking authority to employ and compensate a law firm to

---

[2] In case No. H047388, this court rejected Paul's appeal from a probate court order granting a petition for substituted judgment. In case No. H049271, this court rejected Paul's appeal from a probate court order approving the third accounting.

[3] Paul abandoned his appeal in case No. H049120.

represent the two trusts, Helene, Bye, Helene's attorney, Bye's attorney, and the conservator of Helene's person in Paul's federal action, "whose interests are aligned" in that action. Bye explained in her petitions that she intended first to use the funds in the Ogier Trust to pay for the defense to Paul's lawsuit, but she expected those funds to be exhausted and therefore sought authority to use funds from the Stouky Trust to pay any additional defense expenses. She specifically sought authority to pay a $50,000 retainer to a law firm to defend against Paul's federal lawsuit. Bye sought ex parte orders due to "the exigent nature of the circumstances," as the defendants in Paul's federal lawsuit would have only 21 days to file an answer once he served them with his complaint.

Paul opposed Bye's petitions. He contended that defending against his federal lawsuit on behalf of these defendants would not benefit either trust and was not authorized by the trusts' terms. Paul asserted that defending Bye in the federal lawsuit would benefit only Bye personally, not her performance of her duties as trustee. He also asserted that it would be a violation of the rules of professional conduct for one law firm to represent all of these defendants in his federal lawsuit because they had conflicting interests. Finally, he maintained that there was no exigency to justify ex parte relief.

Bye's reply asserted that the probate court's 2013 order already authorized her to employ and compensate attorneys to represent these defendants in Paul's federal lawsuit. She also asserted that Paul lacked standing to seek disqualification of counsel or to raise any issue concerning a conflict of interest.

The September 9, 2021 hearing on these petitions was not transcribed. The court granted Bye's petitions.[4] Paul timely filed notices of appeal from the September 2021 orders.

---

[4] Bye's petitions sought authority to have the law firm also represent any additional defendants "whose interests are aligned with" these defendants. The court's September 2021 orders on these two petitions restricted that authority to two identified persons, Juliette Nguyen, another of Bye's attorneys, and Rebecca Weisman, the attorney

In November 2021, Paul filed an amended complaint in his federal action. The amended complaint added as named defendants Bye's former attorney, Helene's attorney's law firm, Bye's sole proprietorship, and Bye's attorney's law firm.[5]

In July 2021, Bye had filed a fourth accounting petition for the Stouky Trust, which sought, among other things, authority to pay attorney fees to Bye's and Helene's attorneys for their services. Bye requested authorization to pay her attorneys $34,174.50 for their services from December 2019 through July 2021. She sought authorization to pay Helene's attorney $80,283.12 for attorney fees and costs incurred from January 2019 through June 2021.

Bye's attorney submitted a declaration in support of the accounting petition to which were attached detailed billing statements. The charges included one charge for $207.90 for discussion between the attorneys about various issues including termination of the Ogier Trust. Another charge of $410.85 was for six items, including "emails regarding [Ogier's] assets." A third charge of $1,017.50 was for five items, including "commence draft of petition to terminate Ogier Trust." Helene's attorney submitted a declaration in support of his fees and costs, to which he attached detailed billing statements. One charge for $700 was for four items, one of which was "discuss Sarah [Ogier] Trust." Another charge, for $1,050, was for a meeting with Paul during which Paul made "allegations regarding Sara[h] Ogier Trust." A third charge was for $175 and concerned a "conference . . . regarding Sara[h] Ogier Trust matter" and other issues. A fourth charge, for $437.50, was for many items, including "Ogier Trust." A fifth charge was for $308 and related to the Ogier Trust and unclaimed property in Sarah Ogier's name. A sixth charge was for $1,400 and was for a meeting with Paul and his attorneys

---

for the conservator of Helene's person, if either of them were to be added as a defendant in Paul's federal lawsuit.

[5] The amended complaint also added the law firm of the attorney Paul had consulted.

at which the Ogier Trust was discussed because the meeting concerned Paul's federal lawsuit. In December 2021, Bye filed a continuation of the fourth accounting petition that she had filed in July 2021. The continuation did not seek any additional attorney fees or costs.

In January 2022, Bye filed two new ex parte petitions. She sought to add the four newly named defendants in Paul's federal action to the September 2021 court orders. Bye also sought to add the law firm of the attorney for the conservator of Helene's person, as she anticipated that Paul would add that law firm as a defendant in his federal lawsuit.

Bye's January 2022 petitions also sought authority to retain and compensate appellate counsel to handle the defense to Paul's appeals, including his appeals from the September 2021 court orders. Paul had filed five appeals from probate court orders, and four of them remained pending at that time.[6] Bye sought authorization to have the same attorney handle all of the appeals. She also sought authority to act as authorized by the challenged court orders while the appeals were pending. Bye explained that the exigency justifying ex parte orders was the short deadlines for acting in these litigation matters.

Paul opposed Bye's petitions on the same grounds that he had opposed her prior petitions.[7] The court granted Bye's petitions after a February 2022 hearing that was not transcribed. Paul timely filed notices of appeal from these orders.

In February 2022, Paul filed objections to the fourth accounting petition. He objected only to the attorney fees and costs. Paul argued that defending Bye against Paul's federal lawsuit would not benefit the Stouky Trust or Helene. Paul did not raise any specific objections to or identify as the subject of his opposition any particular charges for attorney fees and costs relating to the Ogier Trust. After a hearing at which

---

[6] See footnotes 2 and 3, *ante*. We resolve Paul's remaining appeals in this opinion.

[7] We grant Paul's unopposed motions to augment the record with his oppositions.

6

there was no court reporter, the probate court approved the fourth accounting petition. Paul timely filed a notice of appeal from this order. This court ordered Paul's appeals of these orders to be considered together for hearing and disposition.

## II. DISCUSSION

Paul's primary contention is that the probate court abused its discretion in granting the petitions because compensating attorneys to represent anyone other than the Stouky Trust will not benefit the trust, is not authorized by the Stouky Trust's terms, and will result in a conflict of interest.

### A. *Preliminary Matters*

Paul raises several additional claims on appeal. First, he contends that the court's orders must be reversed because Bye committed "perjury" in her petitions by recounting the history of Paul's litigation with the Stouky Trust, some of which occurred prior to her involvement in the case, and by submitting a "false document" (the 2006 release).

Although Paul alluded to alleged perjury in his opposition below, nothing in the appellate record reflects that any evidence was introduced on this point or that the probate court ever addressed this contention. Paul's brief fails to cite any evidence in the record in support of his claims that Bye committed perjury.[8] Instead, he relies on various allegations in his unverified federal complaint. Accordingly, Paul's appellate claim lacks merit as we cannot review the merits of his claim that Bye's statements and the document are false.

Paul's reliance on *Mesarosh v. United States* (1956) 352 U.S. 1 is misplaced. In that case, the United States asked the court to remand a criminal case for a new trial

---

[8] His claims appear to be based on the statement of facts in Bye's petitions. Bye verified the petitions under penalty of perjury. However, her verifications stated: "The contents are true of my own knowledge, except as to those matters which are stated on information and belief, and to those matters I believe them to be true." Although the petitions did not specifically identify any of their contents as being stated only on information and belief, it was clear that the events prior to Bye's appointment were stated by her on information and belief.

because it conceded that it had presented false testimony by a government witness. (*Id.* at p. 3.) Here, in contrast, the record contains no evidence (apart from Paul's allegations) of perjury and does not establish the falsity of Bye's petitions or the 2006 release. We reject Paul's contentions based on alleged perjury.

Second, Paul contends that the probate court's 2013 order authorizing Bye to employ and compensate attorneys to defend most of the same people that the court's 2021 orders permitted her to employ and compensate attorneys to defend is invalid because it was obtained by means of misrepresentations. Paul points to no evidence in the record before us establishing that the 2013 order is invalid or was based on any misrepresentations. The record contains no indication that he challenged the validity of that order by appeal. We reject his challenge to this long-final order as unsupported by the record.

Third, Paul claims, as he did below, that he has not engaged in a pattern of vexatious litigation. The record does not reflect that any court has made a finding that Paul is a vexatious litigant so there is no finding or order for Paul to challenge on this basis in this appeal. We note that Paul has filed at least seven appeals to this court from probate orders related to the Stouky Trust and the Ogier Trust. Regardless of whether Paul may in the future be declared a vexatious litigant, the probate court did not make any such finding, so this issue is not before us in these appeals.

Fourth, Paul asserts that the probate court denied his requests for evidentiary hearings at the hearings on Bye's petitions. The only records of those hearings, which were not transcribed, are minute orders that do not reflect that any request was made or denied. Paul's oppositions below did not request evidentiary hearings. Hence, Paul has failed to procure a record that supports his claim that the probate court erroneously denied requests for evidentiary hearings.

Fifth, Paul contends that the probate court erred in approving the fourth accounting petition because "attorney's fees *relating to the Ogier Trust* do not benefit the

8

Stouky Trust." (Italics added.) His opening appellate brief in his challenge to the fourth accounting petition identifies 10 specific charges in the detailed billing statements that he claims were improper because they were for services relating to the Ogier Trust. Paul's appellate claim is that using Stouky Trust funds *for the benefit of the Ogier Trust* is not authorized by the Stouky Trust. Paul did not raise this claim in his opposition to the fourth accounting petition below. That opposition did not identify any specific charges and instead opposed all of the attorney fees and costs on the ground that *defending Bye* would not benefit the Stouky Trust. "Generally, parties cannot argue theories on appeal that they did not present in the trial court; this applies both to theories of liability and theories of defense. [Citations.] 'Such new arguments may be deemed waived, based on common notions of fairness.' " (*In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 510.) Although Paul claims that his appellate theory is "not new," the record establishes otherwise. We decide that Paul has forfeited this claim.

### B. *No Abuse of Discretion*

Paul asserts that the probate court abused its discretion in granting Bye's petitions.[9] He maintains that (1) the two trusts will not benefit from a defense of anyone other than Helene and the trusts, (2) the trusts' terms do not permit trust funds to be used to defend others, (3) joint representation of all of these defendants would create a conflict of interest, and (4) the amount of fees authorized was unreasonable.

"The trustee has the power to prosecute or defend actions, claims, or proceedings for the protection of trust property and of the trustee in the performance of the trustee's duties." (Prob. Code, § 16249.) "The trustee has the power to hire persons, including . . . attorneys . . . , to advise or assist the trustee in the performance of

---

[9] Paul acknowledges the abuse of discretion standard, but he seems to suggest that we could apply de novo review to "a purely legal question." He does not explain how any of the issues he raises are "purely legal question[s]." As his contentions do not raise purely legal issues, we apply the established abuse of discretion standard of review.

9

administrative duties." (*Id*., § 16247.) These statutes provide the trustee with the authority to hire attorneys to defend an action against herself and the attorneys and advisors she has hired to "advise or assist" her in her performance of her duties.

"We review the trial court's order that attorney fees may be payable from trust income under the abuse of discretion standard. [Citation.] In conducting our review, we are mindful that '[t]he underlying principle which guides the court in allowing costs and attorney[] fees incidental to litigation out of a trust estate is that such litigation is a benefit and a service to the trust.' [Citation.] [¶] '[A]mong the ordinary powers and duties of a trustee of a private trust are those of doing all acts necessary and expedient to collect, conserve and protect the property of the trust, to maintain and defend the integrity of the trust for the benefit of the beneficiaries and to employ such assistants as may be necessary for said purposes.' [Citation.] If litigation is necessary for the preservation of the trust, the trustee is entitled to reimbursement for his or her expenditures from the trust; however, if the litigation is specifically for the benefit of the trustee, the trustee must bear his or her own costs incurred, and is not entitled to reimbursement from the trust." (*Terry v. Conlan* (2005) 131 Cal.App.4th 1445, 1461 (*Terry*).)

Paul's primary contention is that defending individuals or entities other than Helene and the trusts in his federal lawsuit is not beneficial to the trusts but only to Bye and the other defendants. The probate court could have reasonably concluded otherwise. Paul's federal lawsuit expansively targeted the trusts, the trustee, the attorneys and advisors that the trustee currently employed, Helene's conservator of her person, and even the attorneys Bye had employed in the past to assist in the administration of the trust. By doing so, Paul's lawsuit threatened to disrupt the administration of the trusts by subjecting to the threat of damages anyone involved in administering or assisting in the administration of the trusts. Since the primary purpose of the trusts was to ensure that Helene, an elderly woman who required constant care, had adequate funds to pay for her care, the avoidance of such disruption was imperative. Helene's care could not be

ensured if the trustee and her attorneys and advisors and the conservator could not perform their duties because they remained under the constant threat that Paul's lawsuit posed. As Bye points out, all of the defendants in question are representatives of Helene's interests and therefore share a single interest, Helene's welfare, in defeating Paul's federal lawsuit. Indeed, as Bye notes, Paul has not identified any basis for a conclusion that any additional fees will be incurred as a result of the attorneys representing additional defendants whose interests are aligned with those of Helene and the trusts.

Paul argues that because his lawsuit alleges "mismanagement," any attorney fees expended to defend against it on behalf of the trustee and the other defendants would protect only their personal interests. The probate court, in the reasonable exercise of its discretion, was not required to credit Paul's allegations, particularly since the court had been supervising the administration of these two trusts for many years and could assess for itself the propriety of the actions taken by the trustee, the attorneys, and the conservator, and approved by the court. The court was entitled to conclude that absolving the trustee and the others of these allegations would benefit the trusts by freeing those in charge of administering the trusts from Paul's allegations.

Paul contends that the mere fact that he makes allegations against Bye personally means that a defense against those allegations will not benefit the trusts but only Bye personally. The probate court could reasonably conclude, in light of its years of supervision of Bye's administration of the trusts, that Paul's allegations of misconduct were meritless and primarily intended to obstruct administration of the trusts and that therefore the trusts would benefit from Bye's defense against Paul's federal lawsuit. That Paul has included as defendants in his federal lawsuit every single person or entity that has ever been associated with the administration of the two trusts and the conservatorship constitutes substantial evidence from which the probate court could infer an intent to obstruct.

11

Paul's reliance on *Whittlesey v. Aiello* (2002) 104 Cal.App.4th 1221 is misplaced. In that case, the Court of Appeal upheld the probate court's denial of a request that attorney fees be paid from the trust's assets where the request was made by the unsuccessful party in litigation between two beneficiaries of the trust. (*Id*. at p. 1228.) The Third District Court of Appeal explained: "Allowance of litigation expenses rests in the sound discretion of the trial court, whose ruling will not be disturbed on appeal absent an abuse. [Citation.] 'The underlying principle which guides the court in allowing costs and attorneys' fees incidental to litigation out of a trust estate is that such litigation is a benefit and a service to the trust.' [Citation.] Consequently, where the trust is not benefited by litigation, or did not stand to be benefited if the trustee had succeeded, there is no basis for the recovery of expenses out of the trust assets." (*Id*. at p. 1230.) In the course of its discussion, the Third District offered an example of litigation that might not benefit a trust. "[L]itigation seeking to remove or surcharge a trustee for mismanagement of trust assets would not warrant the trustee to hire counsel at the expense of the trust. Such litigation would be for the benefit of the trustee, not the trust." (*Id*. at p. 1227.)

The Third District's dicta in *Whittlesey* has no relevance to the circumstances before us. Paul's federal lawsuit was not an action to remove or surcharge a trustee, nor was it a contest between two beneficiaries. In *Whittlesey*, the Third District found no abuse of discretion in the denial of fees, while here Paul asks us to find an abuse of discretion in the granting of fees. The abuse of discretion standard of review requires us to defer to the probate court's exercise of discretion, as the Third District did in *Whittlesey*. We similarly reject Paul's reliance on this court's decision in *Terry*, *supra*, 131 Cal.App.4th 1445. *Terry*, similar to *Whittlesey*, involved litigation between two competing heirs. (*Id*. at p. 1462.)

*Hollaway v. Edwards* (1998) 68 Cal.App.4th 94 supports our conclusion that a probate court has discretion to permit the payment of attorney fees for a trustee's defense even where there are allegations of misconduct by the trustee. In that case, the Fourth

12

District Court of Appeal rejected the appellant's contention that it was improper for the probate court to permit the payment of attorney fees for the defense of one cotrustee against allegations by the other cotrustee of breach of fiduciary duty in the administration of the trust. (*Id.* at pp. 96, 99.) The Fourth District explained that the payment of fees for defense of one cotrustee "benefited the trust by eliminating charges raising serious questions about whether she had and could continue to administer the trust properly." (*Id.* at p. 99.) Similarly, here a defense against Paul's federal lawsuit benefits the trust by combating Paul's challenges to the administration of the trusts and permitting Bye and her attorneys and advisors to continue to administer the trusts for Helene's benefit.

Paul also maintains that the terms of the two trusts do not permit trust funds to be used to defend anyone other than the trusts. The terms of the two trusts are not so limited. The Ogier Trust provides: "The Trustee shall have the power to employ attorneys, accountants, investment advisers, specialists and such other agents as the Trustee shall deem necessary or desirable. . . . The Trustee may charge the compensation of such attorneys . . . and other agents and any other expenses against the Trust." The Stouky Trust provides: "[T]he trustee shall have all of the following powers . . . [¶] . . . [¶] Employ and discharge agents and employees, including but not limited to attorneys, . . . and other advisers . . . to advise and assist the trustee in the management of any trusts created under this trust instrument, and compensate them from the trust property." Neither of these provisions precludes the trustee from compensating attorneys from the trusts' property where the attorneys' representation of those involved in assisting the trustee in the administration of the trusts will benefit the trust. Paul's argument to the contrary is simply a repeat of his contention that defending these defendants will not benefit the trusts, an argument that we have already rejected above.

Paul contends that the probate court's orders were abuses of its discretion because no attorney could properly represent all of these defendants without encountering a conflict of interest. While Paul mentioned this assertion below, he failed to explain and

13

does not explain on appeal how the probate court's orders authorizing joint representation of only those defendants "whose interests are aligned" would raise any conflicts of interest. Interests that "are aligned" necessarily do not conflict. We reject this unsupported contention.

Finally, Paul relies on *Donahue v. Donahue* (2010) 182 Cal.App.4th 259 (*Donahue*) to support his claim that the fees authorized by the court's orders were an abuse of discretion because they were unreasonable. In *Donahue*, the beneficiary of a trust unsuccessfully opposed the former trustee's petition for approval of his final accounting and compensation for his service as trustee. After approval of his accounting and compensation, the former trustee sought *more than $5 million* in attorney and trustee fees for the 45-member legal team at three law firms who had orchestrated his defense against the beneficiary's opposition. (*Id.* at pp. 263–264.) The probate court granted the requested fees (with some small reductions), and the beneficiary appealed. (*Id.* at p. 266.) On appeal, the beneficiary did not contest entitlement to fees but only the reasonableness of the amount incurred. (*Id.* at p. 268.)

The Fourth District found that the former trustee had failed to demonstrate that the millions of dollars in fees were reasonable. "Trustees have a duty 'to administer the trust solely in the interest of the beneficiaries.' [Citations.] They should incur and pay expenses, including legal expenses, which are 'reasonable' in amount and 'appropriate' to the 'purposes and circumstances of the trust.' [Citations.] To recover fees and costs, trustees must subjectively believe the expense was necessary or appropriate to carry out the trust's purposes, and they must show their beliefs were objectively reasonable." (*Donahue*, *supra*, 182 Cal.App.4th at p. 268.)

The case before us does not involve millions of dollars in attorney fees. Here, the orders anticipated the initial payment of a $50,000 retainer to fund a defense against Paul's federal lawsuit and an initial $30,000 retainer to fund a defense against Paul's appeals. While the orders authorized the payment of ongoing fees and costs, there was

14

no indication that those fees and costs would be excessive.  We can see no abuse of discretion in the probate court's determination that these modest initial amounts of attorney fees and ongoing incurred fees and costs were reasonable and would provide a substantial benefit to the trusts.

We conclude that the probate court did not abuse its discretion in issuing the five orders challenged by Paul.

## III.  DISPOSITION

The probate court's September 10, 2021 orders (case Nos. H049808 and H049813), its February 9, 2022 orders (case Nos. H050020 and H050040), and its February 17, 2022 order (case No. H050043) are affirmed.  Respondents shall recover their costs on appeal.

15

_____
Danner, J.

WE CONCUR:


_____
Bamattre-Manoukian, Acting P.J.




_____
Wilson, J.




**H049808, H049813, H050020, H050040, H050043**
*Bye, as Trustee, etc. v. Mula*