[No. S129220. Dec. 14, 2006.]

R. THOMAS FAIR, Plaintiff, Cross-defendant and Appellant, v.
KARL E. BAKHTIARI et al., Defendants and Respondents;
STONESFAIR FINANCIAL CORPORATION, Defendant,
Cross-complainant and Respondent.

## COUNSEL

Howard Rice Nemerovski Canady Falk & Rabkin, Gilbert R. Serota, Curt Holbreich and Chandra Miller Fienen for Plaintiff, Cross-defendant and Appellant.

Shartsis, Friese & Ginsburg, Shartsis Friese, Arthur J. Shartsis, Mary Jo Shartsis, Erick C. Howard; Horvitz & Levy, Ellis J. Horvitz and Jon B. Eisenberg for Defendants and Respondents and for Defendant, Cross-complainant and Respondent.

## OPINION

**CORRIGAN, J.**—Documents prepared for purposes of mediation are generally inadmissible in civil proceedings. (Evid. Code, § 1119, subd. (b).) However, a signed settlement agreement reached through mediation is exempt from this general rule if it "provides that it is enforceable or binding or words

to that effect." (Evid. Code, § 1123, subd. (b) (section 1123(b)).)[1] This case turns on whether the document at issue satisfies the requirements of section 1123(b).

The parties concluded a mediation session by signing a handwritten single-page memorandum captioned "Settlement Terms." The final provision stated: "Any and all disputes subject to JAMS [(Judicial Arbitration and Mediation Services)] arbitration rules." The trial court found this "term sheet" inadmissible, and denied a motion to compel arbitration. The Court of Appeal reversed, holding that the memorandum was admissible because the arbitration provision constituted "words to [the] effect" that the settlement terms were "enforceable or binding" under section 1123(b).

■ The Court of Appeal gave section 1123(b) an unduly expansive reading. The aim of the provision is to allow parties in mediation to draft enforceable agreements without requiring the use of a formulaic phrase. However, the writing must make clear that it reflects an agreement and is not simply a memorandum of terms for inclusion in a future agreement. The writing need not be in finished form to be admissible under section 1123(b), but it must be signed by the parties and include a direct statement to the effect that it is enforceable or binding. For reasons we explain below, the arbitration clause in the memorandum before us fails to satisfy this standard.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff R. Thomas Fair sued Karl E. Bakhtiari, Maryanne E. Fair, and various business entities (we refer to the businesses as the Stonesfair defendants). Bakhtiari was plaintiff's former business partner and Ms. Fair his former wife. Plaintiff alleged that they had wrongfully excluded him from real estate syndications, denied him compensation, misappropriated profits, and engaged in other financial misconduct. Plaintiff also accused Bakhtiari of physically assaulting him on more than one occasion.

Bakhtiari, Ms. Fair, and the Stonesfair defendants answered separately, and the parties mediated their disputes over the course of two days. At the end of the second day, plaintiff's counsel drafted a handwritten memorandum recording settlement terms, as set forth below.[2] The memorandum was dated March 21, 2002, and signed by the mediator and the parties.

---

[1] Further statutory references are to the Evidence Code, unless otherwise specified.

[2] "SETTLEMENT TERMS

"1. Cash payment of $5.4 MM to T. Fair w/in 60 days.

"2. Payment treated as purchase of all T. Fair's stock & interests (as capital gain to Fair)[.]

"3. [Defendants] will not look to Fair for reimbursement or indemnification of any phantom income paid by them to date.

"4. This provision relates solely to Fair's right to indemnity and does not preclude other

The parties filed case management reports informing the court that the case had settled in mediation. On April 4, counsel for the Stonesfair defendants circulated a formalized settlement and release agreement, confirming the parties' intent to settle all their disputes "as of and effective March 21, 2002." A few days before the case management conference, counsel for the Stonesfair defendants learned from plaintiff's counsel that plaintiff believed the parties' agreement for the transfer of his assets did not apply to certain business interests. The attorneys also discussed unresolved tax issues. Counsel for all parties appeared at the case management conference, where Bakhtiari's attorney requested a continuance. He told the court: "We've reached a settlement agreement. We are now in the process of exchanging settlement agreements. And there are some complicated taxation matters involved." The trial court granted the continuance.

The parties were unable to finalize their settlement. On June 6, 2002, one of the attorneys for the Stonesfair defendants substituted as counsel for all defendants, and filed a case management document informing the court that the parties "were ultimately unable to reach agreement as to the scope and subject matter of the proposed settlement terms." He suggested the case "should be resolved through the regular court process."

On June 10, plaintiff's attorney wrote to defendants' counsel, demanding arbitration under paragraph 9 of the settlement memorandum. (See fn. 2, *ante*, pp. 192–193.) Defendants' counsel rejected the demand, contending the parties had not entered an enforceable agreement. He claimed the settlement memorandum was inadmissible under section 1119, subdivision (b), which protects the confidentiality of writings "prepared for the purpose of, in the course of, or pursuant to, a mediation."

Plaintiff moved to compel arbitration, contending the parties had agreed to be bound when they signed the March 21 memorandum, and thus any disputes over the meaning or extent of their agreement were subject to

rights of the parties. Fair will be indemnified as a former officer, director & employee by SFC/SMC/SC [the Stonesfair defendants], according to applicable law, against all 3rd party claims, including LPs [limited partners] or IRS, arising from the operation of SFC/SMC. Fair will not make any adverse contacts with IRS [or] LPs re: SFC/SMC, at risk of loss of indemnity and will not suggest, foment or encourage litigation by LPs or any individual against defendants, at risk of loss of indemnity.

"5. Maryanne Fair disclaims any community prop[erty] interest in settlement proceeds.

"6. Parties will sign mutual releases and dismiss with prejudice all claims. Am't of settlement will be confidential with appropriate exceptions.

"7. All sides bear their own attorneys fees and costs, including experts.

"8. If Fair needs to restructure cash payments for tax purposes, defendants will cooperate (at no additional cost to defendants).

"9. Any and all disputes subject to JAMS [Judicial Arbitration and Mediation Services] arbitration rules."

arbitration. Plaintiff noted that counsel for all defendants had told the court the case had settled. Defendants opposed the motion. They objected to the admission of the settlement memorandum and parts of opposing counsel's declarations reciting mediation discussions. In reply, plaintiff contended the March 21 memorandum was admissible on various grounds, including that the presence of an arbitration provision made the parties' agreement "enforceable" as contemplated by section 1123(b).

The trial court excluded the memorandum and the portions of the declaration by plaintiff's counsel describing the settlement reached in mediation. The court found that the requirements of section 1123 were not met, and concluded "[t]here is insufficient demonstration of an arbitration agreement given the inadmissibility of the term sheet." Accordingly, the court denied the motion to compel arbitration.

The Court of Appeal reversed, deciding that the provision "[a]ny and all disputes subject to JAMS arbitration rules" could only mean the parties intended the settlement terms document to be "enforceable or binding." Therefore, the court held that the memorandum included "words to that effect" and was admissible under section 1123(b). The court also determined that the memorandum reflected a valid arbitration agreement. We granted defendants' petition for review.

## II.  DISCUSSION

■    We have repeatedly noted that the mediation confidentiality provisions of the Evidence Code were enacted to encourage mediation by permitting the parties to frankly exchange views, without fear that disclosures might be used against them in later proceedings. (*Rojas v. Superior Court* (2004) 33 Cal.4th 407, 415–416 [15 Cal.Rptr.3d 643, 93 P.3d 260]; *Foxgate Homeowners Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 14 [108 Cal.Rptr.2d 642, 25 P.3d 1117].) Toward that end, "the statutory scheme . . . unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception." (*Foxgate Homeowners' Assn.*, at p. 15, fn. omitted; see *Rojas*, at p. 416.) In *Foxgate* and *Rojas* we disapproved "judicially crafted exception[s]" to the mediation confidentiality statutes. (*Foxgate Homeowners' Assn.*, at p. 14; see *Rojas*, at p. 424, quoting *Foxgate*.) In this case we construe the exception expressly provided in section 1123(b) for written settlement agreements.

Section 1123(b) was added in 1997, as one of many statutory mediation reforms recommended by the California Law Revision Commission (Commission). (Stats. 1997, ch. 772, § 3; see Recommendation on Mediation Confidentiality (Jan. 1997) 26 Cal. Law Revision Com. Rep. (1996) p. 407.)

The Commission's 1997 recommendation includes an introductory letter to the Governor stating that its revisions were intended "to eliminate ambiguities. In particular, the Commission recommends clarifying the application of mediation confidentiality to settlements reached through mediation. Clarification is critical to aid disputants in crafting agreements they can enforce." (Recommendation on Mediation Confidentiality, *supra*, 26 Cal. Law Revision Com. Rep., at p. 409; see also p. 414.) In its recommendation, the Commission observed: "These recommended reforms on achieving an effective settlement are the most crucial element of the Commission's recommendation. They should enhance the effectiveness of mediation in promoting durable settlements." (*Id.* at p. 424.) The Commission's official comments are deemed to express the Legislature's intent. (*Rojas v. Superior Court, supra,* 33 Cal.4th at p. 418, fn. 6.)

The Commission noted that a predecessor statute, former section 1152.5, "fails to highlight a critical requirement concerning written settlement agreements reached. through mediation. Under Section 1152.5(a)(2), unless it is offered to prove fraud, duress, or illegality, a written settlement agreement is admissible only if it so provides. [Fn. omitted.] Parties overlooking this requirement may inadvertently enter into a written settlement agreement that is unenforceable because it is inadmissible."[3] (Recommendation on Mediation Confidentiality, *supra,* 26 Cal. Law Revision Com. Rep., at p. 422.)

The Commission proposed to remedy this problem by addressing the admissibility of settlement agreements in a separate section. "This will draw attention to the requirements and decrease the likelihood that disputants will inadvertently enter into an unenforceable agreement." (Recommendation on Mediation Confidentiality, *supra,* 26 Cal. Law Revision Com. Rep., at p. 422.) Accordingly, mediation confidentiality and the disclosure of settlement agreements are now treated in separate provisions. Section 1119 states the general rule that writings prepared for, in the course of, or pursuant to

---

[3] Former section 1152.5, subdivision (a)(2) provided: "Except as otherwise provided in this section, unless the document otherwise provides, no document prepared for the purpose of, or in the course of, or pursuant to, the mediation, or copy thereof, is admissible in evidence or subject to discovery, and disclosure of such a document shall not be compelled, in any civil action or proceeding in which, pursuant to law, testimony can be compelled to be given." (Stats. 1996, ch. 174, § 1, p. 1366.)

Former section 1152.5, subdivision (a)(4) provided for disclosure of a document upon the consent of all parties, and subdivision (a)(5) permitted a written settlement agreement to be admitted when relevant to show fraud, duress, or illegality. (Stats. 1996, ch. 174, § 1, p. 1366.) Thus, as noted by the Commission, a party resisting enforcement of an agreement that did not include a provision making it "admissible in evidence" could withhold consent to disclosure and thwart the agreement, unless the party seeking enforcement could show fraud, duress, or illegality.

mediation are inadmissible, "[e]xcept as otherwise provided in this chapter."[4] Section 1123 states the exceptions applicable to written settlement agreements, including the requirement at issue here: "The agreement provides that it is enforceable or binding or words to that effect." (§ 1123(b).)[5] The Commission explained: "[t]he proposed section on settlements would explicitly make an executed written settlement agreement admissible if it provides that it is 'enforceable' or 'binding' or words to that effect. Because parties intending to be bound are likely to use words to that effect, rather than stating that their agreement is 'admissible,' the Commission regards this as an important addition." (Recommendation on Mediation Confidentiality, *supra*, 26 Cal. Law Revision Com. Rep., at p. 423; see also Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid. Code (2006 supp.) foll. § 1123, p. 214.)[6]

---

[4] Section 1119, subdivision (b) provides: "No writing, as defined in Section 250, that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given."

[5] The full text of section 1123 is as follows:

"A written settlement agreement prepared in the course of, or pursuant to, a mediation, is not made inadmissible, or protected from disclosure, by provisions of this chapter if the agreement is signed by the settling parties and any of the following conditions are satisfied:

"(a) The agreement provides that it is admissible or subject to disclosure, or words to that effect.

"(b) The agreement provides that it is enforceable or binding or words to that effect.

"(c) All parties to the agreement expressly agree in writing, or orally in accordance with Section 1118, to its disclosure.

"(d) The agreement is used to show fraud, duress, or illegality that is relevant to an issue in dispute."

The conditions for the admission of oral agreements are addressed in sections 1118 and 1124.

[6] The exception stated in section 1123(b) appears to be unique to California. Mediation statutes frequently exempt signed settlement agreements from the scope of confidentiality protection without further qualification. (See, e.g., Colo. Rev. Stat. § 13-22-302(2.5); Fla. Stat. § 44.102(3); Mont. Code Ann. § 26-1-813 (3); N.C. Gen. Stat. § 7A-38.1(*l*); 42 Pa. Cons. Stat. Ann. § 5949(b)(1) & (c); Va. Code Ann. § 8.01-576.10; Wn. Rev. Code § 5.60.070(1)(e) [governing mediation pursuant to referrals or agreements made before 2006].) This is the approach taken in the Uniform Mediation Act, which has been adopted in six states. (U. Mediation Act, § 6(a)(1); 710 Ill. Comp. Stat. 35/6(a)(1); Iowa Code § 679C.106(1)(a); Neb. Rev. Stat. § 25-2935(a)(1); N.J. Stat. Ann. § 2A:23C-6(a)(1); Ohio Rev. Code Ann. § 2710.05(A)(1); Wn. Rev. Code § 7.07.050(1)(a) [governing mediation pursuant to referrals or agreements made after 2005]; see also *The Uniform Mediation Act* (2002) 22 N. Ill. U. L.Rev. 165, 210–214 [text of act with drafters' notes].)

In Wisconsin, "any written agreement, stipulation or settlement made between 2 or more parties during or pursuant to mediation" is exempted from confidentiality, with no mention of a signature requirement. (Wis. Stat. § 904.085(4)(a).)

Other statutes provide broadly for the disclosure of any communications during mediation if enforcement of a mediated agreement is sought. (See, e.g., Ariz. Rev. Stat. § 12-2238(B)(4); Conn. Gen. Stat. § 52-235d(b)(2) [disclosure permitted if "necessary to enforce a written agreement that came out of the mediation"]; Or. Rev. Stat. § 36.222(4) [disclosure permitted

The Court of Appeal correctly reasoned that the "words to that effect" clause reflects a legislative concern not with the precise words of a settlement agreement, but with terms unambiguously signifying the parties' intent to be bound. The court erred, however, by concluding that the inclusion of an arbitration clause in the parties' list of settlement terms satisfied section 1123(b), on the ground that the clause could only reflect an intent that the document would be "enforceable or binding." Although the Legislature did not provide the courts with a bright line when it permitted the admission of signed agreements including "words to that effect," we conclude a narrower interpretation of this clause is required. We are guided by the ordinary meaning of the statutory language, its context, and the legislative purposes it was meant to serve. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726]; see also *Rojas v. Superior Court, supra*, 33 Cal.4th at p. 422.)

■ The phrase "words to that effect" in section 1123(b) refers to language that conveys a general meaning or import, in this instance the meanings of "enforceable or binding." (American Heritage Dict. (4th ed. 2000) p. 570.) Under section 1123(b), the use of such language will exempt a written settlement agreement from the general rule that documents prepared during mediation are inadmissible in future proceedings. The Legislature's goal was to allow parties to express their intent to be bound in words they were likely to use, rather than requiring a legalistic formulation. The Legislature also meant to clarify the rules governing admissibility and reduce the likelihood that parties would overlook those rules. To meet these objectives, we must balance the requirements of flexibility and clarity, without eroding the confidentiality that is "essential to effective mediation." (*Foxgate Homeowners' Assn. v. Bramalea California, Inc., supra*, 26 Cal.4th at p. 14; see *Rojas v. Superior Court, supra*, 33 Cal.4th at p. 415.)

■ In order to preserve the confidentiality required to protect the mediation process and provide clear drafting guidelines, we hold that to satisfy the "words to that effect" provision of section 1123(b), a writing must directly express the parties' agreement to be bound by the document they sign. Plaintiff would have us infer the parties' intent from the mention of arbitration in the settlement terms memorandum. Arbitration is a method of enforcement subject to negotiation, like other settlement terms. A tentative

"to the extent necessary to prosecute or defend" enforcement action]; Wyo. Stat. § 1-43-103(c)(v).) The federal Administrative Dispute Resolution Act of 1996 authorizes disclosure if it is "relevant to determining the existence or meaning of an agreement . . . that resulted from the dispute resolution proceeding or to the enforcement of such an agreement." (5 U.S.C. § 574(b)(6).)

See generally Deason, *Enforcing Mediated Settlement Agreements: Contract Law Collides With Confidentiality* (2001) 35 U.C. Davis L.Rev. 33, 44–51, 61–66; *The Uniform Mediation Act, supra*, 22 N. Ill. U. L.Rev. at pp. 213–214 (collecting statutes).

working document may include an arbitration provision, without reflecting an actual agreement to be bound. If such a typical settlement provision were to trigger admissibility, parties might inadvertently give up the protection of mediation confidentiality during their negotiations over the terms of settlement. Disputes over those terms would then erupt in litigation, escaping the process of resolution through mediation. Durable settlements are more likely to result if the statute is applied to require language directly reflecting the parties' awareness that they are executing an "enforceable or binding" agreement.

Plaintiff claims that in this case, permitting defendants to use the shield of mediation confidentiality to thwart the agreement reflected in the memorandum of settlement terms would undermine the entire purpose of mediation, which is to settle disputes. He points out that after signing the memorandum, defendants told the trial court the case had settled and circulated a formal agreement declaring the settlement terms effective as of the date of the memorandum. Plaintiff contends this conduct proves that an enforceable settlement was intended, and that defendants' subsequent repudiation of the settlement was merely an instance of "settlors' remorse." According to plaintiff, defendants refused to cooperate with his attempts to bring the parties back before the mediator to discuss the disputes that developed. Defendants, on the other hand, insist they always viewed the memorandum as a nonbinding document similar to a letter of intent regarding a proposed business relationship.

Plaintiff's characterization of defendants' postmediation conduct is one reasonable interpretation of the facts in this case. However, we do not believe the Legislature contemplated that in order to rule on the admissibility of a settlement agreement under section 1123(b), the court would examine extrinsic evidence to resolve competing claims over the parties' intent. As explained above, the statute is designed to produce documents that clearly reflect the parties' agreement that the settlement terms are "enforceable or binding."

Plaintiff seeks support from Business and Professions Code section 467.4, which governs alternative dispute resolution programs administered by the Dispute Resolution Advisory Council (DRAC) of the California Department of Consumer Affairs. There, the Legislature specified that a settlement agreement reached with the assistance of such a program is unenforceable and inadmissible "unless the consent of the parties or the agreement includes a provision that clearly states the intention of the parties that the agreement or any resulting award shall be so enforceable or admissible as evidence." (Bus. & Prof. Code, § 467.4, subd. (a).) Plaintiff reasons that the omission in section 1123(b) of a demand for "a provision that clearly states the intention

of the parties" means the Legislature contemplated a less specific requirement for settlements reached in mediation proceedings.

■ We disagree. The "clearly states" provision of Business and Professions Code section 467.4 is not such a critical statutory phrase that its omission from section 1123(b) can be deemed to reflect a different legislative intent. (Cf., e.g., *In re Young* (2004) 32 Cal.4th 900, 907 [12 Cal.Rptr.3d 48, 87 P.3d 797].) The terms of section 1123(b), particularly when viewed in light of the purposes for which they were framed, are generally consistent with those of Business and Professions Code section 467.4. The Legislature is not required to employ identical terminology in separate statutes serving similar policy objectives. It would be anomalous to impose stricter requirements on settlements fostered by DRAC programs than on those reached in mediation proceedings. ■ We construe related statutes so as to harmonize their requirements and avoid anomaly. (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1089 [29 Cal.Rptr.3d 234, 112 P.3d 623].)

■ Plaintiff also contends that an arbitration clause is severable from the contract in which it appears, and enforceable as a matter of law. He asserts that the strong public policy favoring arbitration supports the enforceability of the arbitration clause in the settlement memorandum signed by the parties. (See, e.g., *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 [8 Cal.Rptr.3d 517, 82 P.3d 727].) However, a settlement agreement drafted during mediation must be admissible before a court can reach the issue of enforceability. Under our interpretation of section 1123(b), the parties are free to draft and discuss enforcement terms such as arbitration clauses without worrying that those provisions will destroy the confidentiality that protects mediation discussions. A different rule could hinder the policy favoring arbitration by discouraging parties from including arbitration clauses in draft agreements.

Plaintiff argues alternatively that the settlement memorandum before us must be viewed as a whole and construed by the standard rules of contract interpretation to determine whether it is "enforceable" for purposes of section 1123(b). However, this interpretation would render the statutory exception superfluous and permit the admission of any signed, written agreement meeting the requirements for an enforceable contract. That approach has been taken in other jurisdictions (see fn. 6, *ante*, pp. 196–197), but our Legislature has imposed a different rule. Section 1123(b) requires the parties to affirmatively provide that their agreement is enforceable or binding.

■ Thus, to satisfy section 1123(b), a settlement agreement must include a statement that it is "enforceable" or "binding," or a declaration in other

terms with the same meaning. The statute leaves room for various formulations. However, arbitration clauses, forum selection clauses, choice of law provisions, terms contemplating remedies for breach, and similar commonly employed enforcement provisions typically negotiated in settlement discussions do not qualify an agreement for admission under section 1123(b).[7] (See, e.g., Aragaki et al., A Litigator's Guide to Effective Use of ADR in California (Cont.Ed.Bar 2005) §§ 12.14, 12.19, 12.21, pp. 540, 543–544.)

## DISPOSITION

The judgment of the Court of Appeal is reversed. The matter is remanded for further proceedings consistent with our opinion.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—Under subdivision (b) of Evidence Code section 1119 (section 1119(b)), documents prepared during mediation are not admissible in evidence. There is an exception to this rule under subdivision (b) of Evidence Code section 1123 (section 1123(b)), which applies to a "written settlement agreement" when it is signed by parties and "provides that it is enforceable or binding or words to that effect."

Here, the parties signed a document during mediation that contained settlement terms, including a provision for arbitration of "[a]ny and all disputes." I agree with the majority that the mediation document is inadmissible under section 1119(b), and that it is not within the settlement agreement exception under section 1123(b). Unlike the majority, however, I do not reach that conclusion by holding that an arbitration clause can never constitute "words to [the] effect" that a settlement agreement is "enforceable or binding." Rather, I conclude that substantial evidence supports the trial court's implied finding that the mediation document at issue here was not a "written settlement agreement."

## I

R. Thomas Fair (plaintiff) sued Maryanne E. Fair (his former wife), Karl E. Bakhtiari, and three corporations, alleging that they had wrongfully excluded him from real estate syndication businesses and engaged in various other misconduct. On March 21, 2002, during the second day of mediation, plaintiff's counsel wrote a document entitled "Settlement Terms," containing

---

[7] Plaintiff raises other arguments that are beyond the scope of our review, some of which he presented in his briefs below. On remand to the Court of Appeal, he may pursue those claims. Of course, the court is not obligated to consider arguments not made in the original briefing.

nine provisions. (See maj. opn., *ante*, at pp. 192–193, fn. 2.) The document stated that plaintiff would receive a "[c]ash payment of $5.4 [million] . . . w/in 60 days" and that the payment would be "treated as purchase of all [plaintiff's] stock & interests (as capital gain to [plaintiff])." The document's final provision stated: "Any and all disputes subject to JAMS arbitration rules." The parties signed the mediation document.

On April 3, 2002, defendants' attorneys submitted case management conference questionnaires to the court in which they stated, in identical language, that "the case has settled" but also that a formal settlement agreement "is being circulated for approval." At a hearing on April 17, 2002, defendants' counsel told the court that the parties had "reached a settlement agreement" but also that they were "now in the process of exchanging settlement agreements." At the same hearing, plaintiff's counsel assured the court that "the case *is going to* settle." (Italics added.)

Despite these assurances, a dispute arose concerning the mediation document's provision that the cash payment to plaintiff would be "treated as purchase of all [plaintiff's] stock & interests (as capital gain to [plaintiff])." Plaintiff's attorney asked one of defendants' attorneys whether defendants would be interested in also purchasing plaintiff's interests in certain limited partnerships related to the corporate defendants. Defendants took the position that those interests, alleged to be worth as much as $500,000, were already included. Plaintiff adamantly insisted they were not included.

On June 6, 2002, defendant Bakhtiari's attorney submitted a case management conference questionnaire to the court stating that "[a]lthough the Case Management Questionnaire submitted on April 3, 2002 by defendant Bakhtiari's former attorney indicated that the dispute had settled after mediation, it in fact, has not" and that "[t]he parties were ultimately unable to reach agreement as to the scope and subject matter of the proposed settlement terms."

On June 20, 2002, plaintiff brought a motion to compel arbitration under the mediation document. Defendants opposed the motion on the ground that there was no admissible evidence of an agreement to arbitrate. Defendants argued that the parties had not intended that the mediation document, which defendants referred to as a "term sheet," would be binding and that they never came to a meeting of the minds on key provisions. Thus, according to defendants, the mediation document was inadmissible under section 1119(b) and not within the settlement agreement exception under section 1123(b). The parties submitted declarations and other documentary evidence in support of their respective positions. The trial court denied the motion to compel arbitration, stating: "There is insufficient demonstration of an arbitration agreement given the inadmissibility of the Term Sheet."

## II

The controlling legal principles were stated by the Court of Appeal in *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793 [71 Cal.Rptr.2d 265] (*Weddington*), as follows: "A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts. [Citation.] An essential element of any contract is 'consent.' [Citations.] The 'consent' must be 'mutual.' [Citations.] 'Consent is not mutual, unless the parties all agree upon the same thing in the same sense.' [Citations.] [¶] 'The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe.' [Citation.] Outward manifestations thus govern the finding of mutual consent required . . . for contract formation. [Citation.] The parties' outward manifestations must show that the parties all agreed 'upon the same thing in the same sense.' (Civ. Code, § 1580.) If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation." (*Weddington, supra,* 60 Cal.App.4th at pp. 810–811; accord, *Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208–209 [45 Cal.Rptr.3d 692].) "Where the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed." (*Bustamante v. Intuit, Inc., supra,* at p. 208.)

This case is similar to *Weddington.* There, mediation resulted in a one-page memorandum stating that " '[a]ll parties agree to settle and dismiss on the following terms' " and then providing for a cash payment, the transfer of certain property, and a licensing agreement. (*Weddington, supra,* 60 Cal.App.4th at p. 799.) The mediation memorandum also contained a provision for its enforcement under Code of Civil Procedure section 664.6, which provides for the entry of judgment under the terms of a stipulated settlement. (*Weddington, supra,* at p. 800.) The Court of Appeal observed: "The reference to enforceability pursuant to section 664.6 suggests that the parties subjectively thought they had formed a settlement contract. Nevertheless, subsequent events illustrate quite vividly that they had never agreed on the same terms for a Licensing Agreement." (*Id.* at pp. 800–801.)

When disputes surfaced about the meaning of the licensing provision, the parties in *Weddington* returned to the mediator, who attempted to impose terms to which one party never agreed. (*Weddington, supra,* 60 Cal.App.4th at pp. 796–797, 804–807.) The Court of Appeal concluded that the parties had never agreed upon the material terms needed for an enforceable license agreement and that the mediator lacked authority to impose material terms to which the parties had never agreed. (*Id.* at pp. 815–816; see also *Terry v.*

*Conlan* (2005) 131 Cal.App.4th 1445, 1460 [33 Cal.Rptr.3d 603] ["like *Weddington*, the parties left significant ambiguities in . . . material terms that demonstrated there was no meeting of the minds"].)

Here, substantial evidence supports the trial court's implied finding that, as in *Weddington, supra*, 60 Cal.App.4th 793, the parties may have subjectively believed they had reached a settlement agreement, but a key term of the agreement (requiring plaintiff to convey "all [his] stock and interests") was ambiguous, the ambiguity could not be resolved by consideration of the parties' outward manifestations, and later events demonstrated that the parties did not understand the term in the same way. This failure to reach a meeting of the minds prevented the formation of a contract. (See *Weddington, supra*, at p. 811 ["If . . . a supposed 'contract' does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract."].) Accordingly, there was no "written settlement agreement" within the meaning of Evidence Code section 1123, and the trial court properly ruled that the document the parties signed during mediation was inadmissible in evidence.

### III

Instead of relying on the absence of a "written settlement agreement," the majority relies on the absence of a provision in the mediation document "that it is enforceable or binding or words to that effect" (§ 1123(b)). The majority holds that the arbitration clause was not, and could never be, such a provision. I disagree.

Of course, as this case illustrates, an arbitration provision does not necessarily mean that a document prepared during mediation is a binding agreement rather than merely a list of partial or tentative contract terms. But once a court has determined that a document prepared and signed by the parties during mediation is actually a "written settlement agreement"—that it embodies a meeting of the minds on all material terms needed for settlement—the inclusion in that settlement agreement of a provision for arbitration—which is an enforcement mechanism—may properly be viewed as an acknowledgement by the parties that their settlement agreement is binding and enforceable. A statement that any dispute over a settlement agreement's terms will be subject to arbitration means that the agreement is "enforceable" through the arbitration process.

To be sure, the wording of the arbitration provision will make a difference. The wording of the provision must be consistent with the conclusion that the document is actually a settlement agreement and that it is to be enforced by

arbitration. When these requirements are satisfied, however, an arbitration provision should, in my view, satisfy the statutory requirement that the "written settlement agreement" expressly provide "that it is enforceable or binding or words to that effect."

Although I do not agree with the majority's holding that an arbitration clause can never satisfy the requirement of section 1123(b) that a written settlement agreement "provide[] that it is enforceable or binding or words to that effect," I agree with the majority that the trial court here properly ruled the mediation document inadmissible under section 1119(b). Accordingly, I join in the reversal of the Court of Appeal's judgment, which reversed the trial court's order denying the motion to compel arbitration.