Filed 10/29/13  Zhang v. American Immigration Investment Fund CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| LEI ZHANG, | B245744 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC477129) |
| v. | |
| AMERICAN IMMIGRANT INVESTMENT FUND I, LLC et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James R. Dunn, Judge.  Affirmed as to American Immigration Investment Fund I, LLC only.

The Lee Law Group and Justin M. Lee for Defendants and Appellants American Immigrant Investment Fund I, LLC, Lee & Kent Corp. and Justin Moongyu Lee.

Lee Tran & Liang, Enoch H. Liang and Cyrus Khojandpour, for Plaintiff and Respondent Lei Zhang.

_____

Justin Moongyu Lee, his law firm, Lee & Kent Corporation, and an entity operated by Lee, American Immigration Investment Fund I, LLC (Fund) (collectively the Lee parties), appealed from the judgment entered against them after the trial court granted the motion of Lei Zhang to enforce the terms of a settlement agreement pursuant to Code of Civil Procedure section 664.6.[1] Sometime after the Lee parties filed their opening brief in this court, Lee and his law firm petitioned for protection from the bankruptcy court. The bankruptcy cases are apparently still pending. Accordingly, proceedings as to those two appellants are stayed; the judgment as to the Fund is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2010 Zhang's husband, Ling Ye, retained Lee & Kent to assist his wife in gaining residency status in the United States through the EB-5 immigrant investor visa program.[2] In August 2010, as part of the investment transaction, Zhang signed subscription and escrow agreements with the Fund and wired $530,000 (the investment amount plus $30,000 in filing fees and other costs) to the Fund to support her EB-5 petition. According to the subscription agreement $500,000 would remain in escrow at Wilshire State Bank pending approval of the petition. Upon approval of the petition the money would be released from escrow and invested; if the petition were denied, the Fund would return the money within 30 days. The escrow agreement reiterated these terms.

In July 2011 Zhang learned her petition had been denied. She ultimately decided not to refile the petition and requested the return of her $500,000. When Lee failed to return the money, Zhang filed this lawsuit, alleging causes of action for breach of contract, breach of the covenant of good faith and fair dealing, conversion, promissory

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] The EB-5 program provides an opportunity for foreign nationals who contribute a certain amount of money to qualifying business enterprises in the United States—and create a specified number of American jobs—to obtain legal permanent residency in the United States. The procedure for granting immigrant status is authorized by title 8 United States Code, sections 1154(a)(1)(H) and (b), and 1153(b)(5), and is detailed in title 8, Subchapter B of the Code of Federal Regulations.

fraud, negligent misrepresentation and legal malpractice.[3] Zhang sought damages in the amount of $530,000, exemplary damages and prejudgment interest.

After discovering Lee's home was encumbered by tax liens and he had been sued several times in recent months over his operation of the Fund, Zhang sought a writ of attachment under section 485.220.[4] The court found Zhang had established probable validity of the claim and issued a protective order under section 486.030.[5]

Within days of the issuance of the order and service of the complaint, the parties settled the case and executed a term sheet governing the settlement. Under the provisions of the term sheet, which Lee signed on behalf of himself, his law firm and the Fund, the Lee parties became jointly and severally liable for repayment of approximately $550,000 in four monthly installments: (1) $150,000 by February 3, 2012; (2) $150,000 by March 2, 2012; (3) $150,000 by April 3, 2012; and (4) $100,000 by May 3, 2012. The term sheet also provided the temporary protective order would not be released until the last payment had been received; failure to meet the first payment would be a material breach; two of the final three payments would be accorded 10-day grace periods before

---

[3]     The complaint also alleged Lee had failed to disclose conflicts of interest relating to his and others' financial interests in the Fund and had violated California Rule of Professional Conduct 3-300 by entering into a business transaction with a client without the proper disclosures. On January 28, 2013 the State Bar filed a notice of disciplinary charges against Lee based on these events. The charges are still pending.

[4]     For a trial court to issue a right to attach order, it must find, among other things, that "[t]he plaintiff has established the probable validity of the claim upon which the attachment is based." (§ 485.220, subd. (a)(2).) In other words, the trial court must find that "'it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim.'" (*Lorber Industries v. Turbulence, Inc.* (1985) 175 Cal.App.3d 532, 535.)

[5]     Section 486.030, subdivision (a), provides: "In any case where the plaintiff has applied for a right to attach order and writ of attachment under Chapter 5 (commencing with Section 485.010), the court may in its discretion deny the application for the order and writ and issue instead a temporary protective order under this chapter if it determines that the requirements of Section 485.220 are satisfied but that the issuance of the temporary protective order instead of the right to attach order and writ would be in the interest of justice and equity to the parties . . . ."

breach could be declared; and the remedy for breach would be entry of judgment on all claims. The term sheet contemplated execution of a long-form agreement based on the same terms and stated "this document is enforceable pursuant to [§] 664.6 and Court to retain jurisdiction over the parties to enforce settlement until performance in full of the settlement terms."

Lee made the first and second payments on the scheduled dates, notwithstanding delays in completion of the long-form agreement. The third payment, however, was not made. To prevent Zhang from enforcing the settlement agreement, the Lee parties proposed extending the date for the remaining payments to May 15, 2012 and June 15, 2012, with no further grace periods. Zhang accepted the modification provided a late payment would constitute a material breach.

On April 11, 2012 the Lee parties sent a proposed version of the long-form agreement with the modified payment schedule. Zhang returned an executed copy of the agreement to Lee & Kent. The Lee parties, however, failed to execute the long-form agreement or to make the May 15, 2012 scheduled payment. Instead, on the day the third payment was due, the Lee parties filed an answer to the complaint.

Zhang responded by filing a motion for entry of judgment pursuant to section 664.6. The Lee parties opposed the motion on the ground the term sheet was nothing more than an "agreement to agree." The trial court tentatively granted the motion but continued the hearing to allow the parties to agree on an alternative payment schedule.

In July 2012 the parties reached a tentative agreement to reschedule the payments and stipulated to postpone entry of judgment in light of the new schedule until October 12, 2012. The day before the first rescheduled payment was due on August 1, 2012, Lee & Kent requested an additional two-week extension. Notwithstanding Zhang's accommodations, the Lee parties failed to make any further payments. On October 18, 2012 the trial court entered judgment against them.

4

## DISCUSSION

1. *Standard of Review*

Section 664.6 provides, "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." This section grants authority to a trial court to enforce settlement agreements without the need to file a new lawsuit. (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 905, 911 [§ 664.6 creates summary procedure to enforce settlement agreements when certain prerequisites satisfied]; see *Timney v. Lin* (2003) 106 Cal.App.4th 1121, 1125; *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809 (*Weddington*).) The "strong public policy of this state [is] to encourage the voluntary settlement of litigation." (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1359; accord, *Casa de Valley View Owner's Assn. v. Stevenson* (1985) 167 Cal.App.3d 1182, 1190 ["public policy of this state supports pretrial settlement of lawsuits and enforcement of judicially supervised settlements"].)

To the extent applicable, ordinary principles of contract interpretation apply. (See *Weddington, supra,* 60 Cal.App.4th at p. 797.) The trial court must give effect to the mutual intention of the parties as it existed at the time the contract was executed. (Civ. Code, § 1636.) The parties' mutual intent is interpreted according to objective, rather than subjective, criteria. (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126; *Weddington,* at p. 811; see also Civ. Code, § 1638 [the "language of a contract is to govern its interpretation"].) "Although a judge hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment [citations], nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Weddington,* at p. 810; accord, *Osumi v. Sutton, supra,* 151 Cal.App.4th at p. 1360.)

5

"The trial court's factual findings on a motion to enforce a settlement pursuant to section 664.6 'are subject to limited appellate review and will not be disturbed if supported by substantial evidence.'" (*Osumi v. Sutton, supra,* 151 Cal.App.4th at p. 1360; accord, *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182.) "Consistent with the venerable substantial evidence standard of review, and with our policy favoring settlements, we resolve all evidentiary conflicts and draw all reasonable inferences to support the trial court's finding that these parties entered into an enforceable settlement agreement and its order enforcing that agreement." (*Osumi,* at p. 1360*;* see also *Fiore v. Alvord* (1985) 182 Cal.App.3d 561, 565.) We review the trial court's legal conclusions de novo. (*Weddington, supra,* 60 Cal.App.4th at p. 815.)

### 2. *The Trial Court Properly Enforced the Term Sheet Pursuant to Section 664.6*

"A settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain." (*Lindsay v. Lewandowski* (2006) 139 Cal.App.4th 1618, 1623 (*Lindsay*), citing *Weddington, supra,* 60 Cal.App.4th at p. 811; see Civ. Code, § 1580 ["[c]onsent is not mutual, unless the parties all agree upon the same thing in the same sense"]; Civ. Code, § 3390, subd. 5 [contract not specifically enforceable where terms are "not sufficiently certain" to make act to be done "clearly ascertainable"].) For this reason, a contract that "leaves an essential element for future agreement of the parties" is ordinarily unenforceable. (*Okun v. Morton* (1988) 203 Cal.App.3d 805, 817.)

It is not necessary, however, to state every term in the contract. (*Elite Show Services, Inc. v. Staffpro, Inc.* (2004) 119 Cal.App.4th 263, 269.) "Agreements to agree are valid and enforceable if unessential elements only are reserved for the future agreement. 'The general rule is that if an "essential element" of a promise is reserved for the future agreement of both parties, the promise gives rise to no legal obligation until such future agreement is made.' [Citations.] [¶] Whether a term is 'essential' 'depends upon the relative importance and the severability of the matter left to the future; it is a question of degree. . . .' [Citations.] The relative importance of a term may turn in part upon the intentions of the parties. . . . [Citations.] At times, subsequent conduct of the

6

parties may establish the contours of an agreement that appeared uncertain at its inception and thus render it enforceable." (*Coleman Engineering Co. v. North American Aviation, Inc.* (1966) 65 Cal.2d 396, 417.) In addition, the court may rely on other extrinsic evidence to clarify the acts required under the agreement. (*Okun v. Morton, supra,* 203 Cal.App.3d at p. 818; see *Patel v. Liebermensch* (2008) 45 Cal.4th 344, 349 ["'Equity does not require that all the terms and conditions of the proposed agreement be set forth in the contract. The usual and reasonable conditions of such a contract are, in the contemplation of the parties, a part of their agreement.'"].)

"In determining whether the material factors in a contract are sufficiently certain for specific performance, 'the modern trend of the law favors carrying out the parties' intention through the enforcement of contracts and disfavors holding them unenforceable because of uncertainty. . . . The defense of uncertainty has validity only when the uncertainty or incompleteness of the contract prevents the court from knowing what to enforce.'" (*Blackburn v. Charnley* (2004) 117 Cal.App.4th 758, 766; accord, *Bowers v. Raymond J. Lucia Companies, Inc.* (2012) 206 Cal.App.4th 724, 736 (*Bowers*); see *Patel v. Liebermensch, supra,* 45 Cal.4th at p. 349 ["''"[t]he law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if [they] can be ascertained'''"].)

The Lee parties assert the term sheet omits crucial elements that make it fatally uncertain and urge us to follow the decisions in *Weddington, supra,* 60 Cal.App.4th 793 and *Lindsay*, *supra,* 139 Cal.App.4th 1618 in which appellate courts reversed trial court orders enforcing settlements under section 664.6. The complicated circumstances in *Weddington* and *Lindsay*, however, distinguish those decisions from the situation presented here, which involves the simplest of facts—a conceded debt and a payment schedule. In *Weddington*, for instance, the parties' mediation resulted in a deal point memorandum that contemplated execution of a licensing agreement regarding audio recording rights central to the parties' dispute and provided for the resolution of disputes before a private judge. (*Weddington,* at pp. 798-799.) Although the memorandum stated

7

the settlement would be enforceable under section 664.6, the parties were unable to agree on the critical terms of the licensing agreement. (*Weddington,* at pp. 801-807.) Nonetheless, the trial court entered a judgment based on the deal point memorandum and licensing terms imposed by the private judge without the consent of all the parties. (*Id.* at pp. 808-809.) Reversing, the Court of Appeal concluded the parties had never agreed upon the material terms needed for an enforceable license agreement and that the mediator lacked authority to impose terms to which the parties had never agreed. (*Id.* at pp. 815-816; see also *Fair v. Bakhtiari* (2006) 40 Cal.4th 189, 203, quoting *Terry v. Conlan* (2005) 131 Cal.App.4th 1445, 1460 ["'like *Weddington,* the parties left significant ambiguities in . . . material terms that demonstrated there was no meeting of the minds'"].)

A similar ambiguity in an essential term of a mediated settlement led to reversal of the judgment in *Lindsay, supra,* 139 Cal.App.4th 1618. In *Lindsay* the parties signed a stipulated settlement agreement following private mediation. (*Id.* at p. 1620.) Most of the parties signed a version stating they agreed to resolve any disputes regarding the terms of the agreement by binding arbitration; others signed a version requiring a return to the mediator to resolve such disputes. (*Id.* at pp. 1620, 1623.) Another provision required appellants to pay respondents a specific amount of money, subject to terms to be mutually agreed upon, or determined by "binding mediation" if they could not be mutually agreed upon. (*Ibid.*) Over their objection, appellants participated in binding mediation to determine the terms of their payment to respondents. The mediator then issued an award in favor of respondents, which the trial court subsequently confirmed. (*Id.* at p. 1622.) The appellate court reversed, reasoning from the provision in the contract striking out mediation and replacing it with arbitration that the parties regarded binding mediation as something different from arbitration. (*Id.* at p. 1623.) Because of these discrepancies the court was unable to ascertain what the parties actually meant when they used the term "binding mediation" and concluded the parties' agreement was too uncertain to be enforceable. (*Ibid.*; see *Bowers, supra,* 206 Cal.App.4th at pp. 735-736.)

8

These cases not only share the distinctive factor of a private mediator overstepping the limits of his or her authority but also illustrate how a seemingly definite term can become uncertain in subsequent proceedings.  No such uncertainty is present here; nor was the court required to construe an ambiguous material term of the agreement.  The term sheet provided for four monthly payments totaling $550,000.  Zhang agreed not to execute on the protective order except in the event of a material breach, defined as a late payment, in which case the Lee parties agreed to entry of judgment on all claims.  The settlement contemplated mutual general releases, was to be confidential and would be memorialized in a long-form agreement.

That these terms were simple and clear is evidenced by Lee's payment of the first two installments.  While his law firm repeatedly sought extensions of time to pay the remaining installments, the enforceability of the agreement was never questioned.  Indeed, Zhang executed and returned to the law firm the final long-form agreement prepared by the firm that included additional standard terms, including one related to confidentiality.  The Lee parties' failure to pay after these accommodations was wholly unrelated to any ambiguity in the agreement.  Under these circumstances, there was no "'uncertainty or incompleteness of the contract'" that might "'prevent[] the court from knowing what to enforce.'"  (*Blackburn v. Charnley, supra,* 117 Cal.App.4th at p. 766; accord, *Bowers, supra,* 206 Cal.App.4th at p. 736.)  When the Lee parties failed to make the third payment, even after months of accommodation by Zhang, the court properly entered judgment at her request.[6]

---

[6]    We also reject the Lee parties' alternative argument that disputed issues of material fact barred entry of judgment under section 664.6.  A motion under section 664.6, although summary in nature, is not a motion for summary judgment under section 437c.

9

## DISPOSITION

The judgment is affirmed as to American Immigration Investment Fund I, LLC. Zhang is to recover her costs on appeal.

PERLUSS, P. J.

We concur:

ZELON, J.

SEGAL, J.[*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10