Filed 7/29/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Marriage of JOANNE R. DALY and DAVID F. OYSTER. | B249255 |
| | (Los Angeles County Super. Ct. No. BD546477) |
| JOANNE R. DALY, Respondent, v. DAVID F. OYSTER, Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. David S. Cunningham, Judge. Affirmed.

Law Office of John A. Tkach and John A. Tkach, for Appellant.

Law Offices of Varoujan Agemian, Varoujan Agemian and Anahid Agemian for Respondent.

_____

David Oyster appeals from a limited judgment on a reserved issue in this marital dissolution action, arguing the judgment was grounded on a document made inadmissible by Evidence Code section 1119. We agree and affirm.

## BACKGROUND

Joanne Daly and Oyster were married in 1981 and separated in 2004. In 2005, Daly filed a marital dissolution petition in the Los Angeles Superior Court. The petition was never served on Oyster and no other documents were filed, but the parties entered into mediation which resulted in a proposed stipulated judgment that settled all issues concerning marital rights, including child custody and support, spousal support, and division of property.

Specifically, the stipulated judgment, dated June 2006, provided for allocation of four parcels of real property and division of personal property, including three automobiles, three checking accounts, four retirement accounts, four life insurance policies, and five credit accounts, with Daly waiving her right to an equalization payment of approximately $340,000. The stipulated judgment provided for joint legal custody of the parties' one minor child (who is now 17 years old) and set forth a schedule for physical custody and visitation and child support. It also provided that Daly would pay Oyster $2,000 per month in spousal support through August 2020. The stipulated judgment stated that Daly would pay filing and mediation fees incurred for purposes of the divorce but that each party would be responsible for his or her own attorney fees. The parties represented that they had disclosed, in the form of asset schedules and income and expense declarations, all assets, liabilities, income and benefits of either party, and waived any further asset valuation.

The stipulated judgment stated it constituted a "marital settlement agreement which will be conformed as a Stipulated Judgement [*sic*] of the court." It stated it contained, "the entire agreement between Petitioner and Respondent with respect to all marital rights" and "shall be the operable court judgment with relation to the Stipulated Judgment for Dissolution of Marriage." Finally, the stipulated judgment stated the court

would "reserve[] jurisdiction to supervise the payment of any obligation ordered paid or allocated in this Stipulated Judgment; supervise the execution of any documents required or reasonably necessary to carry out the terms of this Judgment; and supervise the overall enforcement of this Judgment."

Neither the stipulated judgment nor any other document was ever filed in the dissolution proceedings, and on May 31, 2011, the superior court dismissed Daly's petition for lack of prosecution.

Within two weeks, on June 13, 2011, Daly filed a second dissolution petition and moved to have the stipulated judgment both entered nunc pro tunc as a judgment in the dismissed proceedings and incorporated into a judgment in the current proceedings. She represented she had failed to file the stipulated judgment in the prior proceedings because she mistakenly thought the mediator would do so, and thereby effect entry of judgment. She also represented that the parties never reconciled, and all terms of the stipulated judgment had been completely performed.

Oyster opposed the motions, arguing he thought the 2006 stipulated judgment memorialized merely the first round of negotiations, after which he would be given an opportunity to request modifications. He represented that some obligations under the stipulated judgment had not been performed. For example, pension accounts had not been divided and distributed. Oyster stated he had neither provided nor received income and expense declarations or a schedule of assets, and he was told additional steps would need to be taken and documents filed before the divorce could go forward.

The trial court denied Daly's motion to enter the 2006 stipulated judgment in the dismissed proceedings. It also denied without prejudice her motion to enforce it in the current proceedings. The matter was then set for trial on the enforceability of the stipulated judgment.

At trial, Oyster objected to admission of the stipulated judgment on the ground that it was protected by the mediation privilege, Evidence Code section 1119. The trial court overruled the objection and, after testimony, concluded the stipulated judgment

3

constituted an enforceable marital settlement agreement (MSA). The court found "there was complete performance," but incongruously also found "there was part performance by petitioner and no evidence was presented as to what was performed and what was not performed."

On May 21, 2013, the trial court entered a "judgment on reserved issues" expressly based on the 2006 stipulated judgment. The judgment resolved child custody, visitation and support issues pursuant to the stipulated judgment, resolved spousal support pursuant to an order dated May 11, 2012 (which is not in the record), and ordered property division and payment of attorney fees as set forth in the stipulated judgment. The judgment reserved jurisdiction "over all other issues" and did not purport to effect a complete dissolution. The minute order provided that "the parties are free to pursue post-judgment modification if they wish to, but the court finds that the MSA is an enforceable contract and judgment is to be entered based on that contract."

Oyster timely appealed.

## DISCUSSION

### A. Admissibility of the Stipulated Judgment

Oyster first contends the 2006 stipulated judgment could not be admitted into evidence in the 2011 dissolution proceedings because it resulted from mediation, and was thus confidential pursuant to Evidence Code section 1119. We disagree.

With limited exceptions, no evidence of anything said and no writing prepared in the course of a mediation is admissible in any civil action. (Evid. Code, § 1119, subds. (a) & (b).)[1] One exception concerns written settlement agreements. A written settlement agreement prepared in the course of a mediation is not made inadmissible by Evidence

_____

[1] Evidence Code section 1119, subdivision (b) provides: "No writing, as defined in Section 250, that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given."

4

Code section 1119 if the agreement is signed by the settling parties and "[t]he agreement provides that it is admissible or subject to disclosure, *or words to that effect*," or "[t]he agreement provides that it is enforceable or binding *or words to that effect*." (Evid. Code, § 1123, subds. (a) & (b), italics added.)[2] Evidence Code section 1119 thus states the general rule that writings prepared in the course of mediation are inadmissible, "[e]xcept as otherwise provided in this chapter." Section 1123 states the exceptions applicable to written settlement agreements, including the requirements at issue here: The agreement provides that it is admissible or subject to disclosure or that it is enforceable or binding, or words to that effect. (Evid. Code, § 1123, subds. (a) & (b); *Fair v. Bakhtiari* (2006) 40 Cal.4th 189, 195-196.)

The "words to that effect" clause "reflects a legislative concern not with the precise words of a settlement agreement, but with terms unambiguously signifying the parties' intent" to disclose the agreement or be bound by it. (*Fair v. Bakhtiari*, *supra*, 40 Cal.4th at p. 197.) The phrase "refers to language that conveys a general meaning or import." (*Ibid.*) Under Evidence Code section 1123, "the use of such language will exempt a written settlement agreement from the general rule that documents prepared

---

[2] The full text of section Evidence Code section 1123 is as follows:

"A written settlement agreement prepared in the course of, or pursuant to, a mediation, is not made inadmissible, or protected from disclosure, by provisions of this chapter if the agreement is signed by the settling parties and any of the following conditions are satisfied:

"(a) The agreement provides that it is admissible or subject to disclosure, or words to that effect.

"(b) The agreement provides that it is enforceable or binding or words to that effect.

"(c) All parties to the agreement expressly agree in writing, or orally in accordance with Section 1118, to its disclosure.

"(d) The agreement is used to show fraud, duress, or illegality that is relevant to an issue in dispute."

5

during mediation are inadmissible in future proceedings. The Legislature's goal was to allow parties to express their intent to be bound in words they were likely to use, rather than requiring a legalistic formulation. The Legislature also meant to clarify the rules governing admissibility and reduce the likelihood that parties would overlook those rules. To meet these objectives, we must balance the requirements of flexibility and clarity, without eroding the confidentiality that is 'essential to effective mediation.' [Citations.]" (*Fair v. Bakhtiari*, *supra*, at p. 197.) To satisfy the "words to that effect" provision of subdivision (a) or (b) of section 1123, a writing must directly express the parties' agreement to disclose or be bound by the document they sign. (*Fair v. Bakhtiari*, at p. 197; see *Stewart v. Preston Pipeline Inc*. (2005) 134 Cal.App.4th 1565, 1578.)

Here, the parties characterized the stipulated judgment as a "marital settlement agreement," agreed it would "be the operable court judgment with relation to the Stipulated Judgment for Dissolution," and agreed the court would "reserve[] jurisdiction to supervise the payment of any obligation ordered paid or allocated in this Stipulated Judgment; supervise the execution of any documents required or reasonably necessary to carry out the terms of this Judgment; and supervise the overall enforcement of this Judgment." Use of such language clearly reflected the parties' agreement that the stipulated judgment be subject to disclosure and be enforceable. The parties agreed the court would enforce the document, which it could not do unless the document was disclosed to it. It was therefore admissible under Evidence Code section 1123.

Defendant argues the stipulated judgment on its face indicates it was to be used only in the prior dismissed proceedings. No such limitation appears on the face of the document, as the stipulated judgment provides only it "shall be the operable court judgment with relation to the Stipulated Judgment for Dissolution of Marriage," and does not specify which dissolution of marriage. Nevertheless, we acknowledge that the document was prepared for and intended to be used in the initial divorce proceedings. But for purposes of Evidence Code section 1123 the pertinent inquiry is whether the parties intended the stipulated judgment to remain confidential, not whether they intended

6

that it survive dismissal of the original divorce proceedings. By providing that the court would enforce the agreement and they would be bound by it, the parties clearly demonstrated they did not intend that it remain confidential.

## B. Enforceability

Oyster contends a stipulated judgment created only for one case cannot become the basis for a judgment in a subsequent case. He cites no authority for the proposition, and at any rate nothing in the record suggests the stipulated judgment here was intended to be limited to the original divorce proceedings. The agreement stated its purpose was "to make a complete settlement of the division of community, quasi-community and co-owned property between [Daly and Oyster]," and nothing in the record suggests the nature of that property materially changed between May 31, 2011, when the original dissolution petition was dismissed, and June 13, 2011, when Daly filed the second petition. Admittedly, the stipulated judgment provided that it "shall be the operable court judgment *with relation to the Stipulated Judgment for Dissolution of Marriage*" (italics added), and when it was executed the only petition for dissolution of marriage was the one Daly filed in 2005. But she filed no "stipulated judgment for dissolution of marriage" in that action, so the agreement could not have been referring to a specific document filed therein. It seems apparent that the parties intended by the agreement simply to settle their divorce. Such a settlement by its nature recognizes the termination of a relationship and effects the parties' final separation and independence by disjoining and fixing property and other rights going forward in perpetuity. Nothing suggests the parties here intended that separation and independence not occur—and the settlement agreement become null—if the divorce took longer than five years.[3]

---

[3] In a related vein, Oyster contends the judgment constitutes an improper nunc pro tunc order because it effectively opens and modifies the May 31, 2011 judgment of dismissal, in the prior dissolution proceedings. We disagree. The judgment here pertains only to the current proceedings. The original proceedings remain dismissed.

7

Somewhat perplexingly, Oyster contends that because Daly would be time-barred from asserting any breach of the settlement agreement, "it follows that [she] is time barred from maintaining any action to enforce the" agreement. Oyster calculates this supposed limitation by reasoning it was incumbent upon Daly to file the stipulated judgment in 2006, when it was executed, and the limitations period for an action for breach of written contract is four years (Code of Civ. Proc., § 337). Oyster cites no authority either for the requirement that a stipulated judgment be filed immediately when executed or for the proposition that the limitations period on an action for breach also limits the time in which a stipulation may be enforced. At any rate, assuming the settlement agreement was intended to terminate the original dissolution proceedings, those proceedings were not required to be completed until 2011, five years after Daly filed the original petition. (Code Civ. Proc., § 583.310.) Therefore, even under Oyster's reasoning Daly had until 2015 (the filing deadline plus four years) to enforce the settlement.

Oyster argues no judgment with respect to the parties' property rights may be entered without the parties having executed and served final declarations of disclosure and current income and expense declarations. He is correct. (Fam. Code, §§ 2105, 2106.) But the trial court has not yet entered a final "judgment with respect to the parties' property rights." The judgment is "on reserved issues" only, namely the enforceability of the 2006 stipulated judgment, and the court stated in its minute order that the parties were free to pursue modification. Although a box is checked on the form judgment indicating "property division is ordered as set forth in the attached [¶] Settlement agreement, stipulation for judgment, or other written agreement," we take this to mean only that the 2006 stipulated judgment will govern division of marital property. Final disclosures and possible modifications are yet to be made, and must be made before a final judgment of dissolution is entered.

Finally, Oyster argues with citation to no authority or principle that the trial court lacked jurisdiction to consider whether the stipulated judgment constituted an enforceable

8

marital settlement agreement.  The argument is meritless.  (Code Civ. Proc., § 395, subd. (a) [superior court where either petitioner or respondent resides is proper court for trial of dissolution of marriage proceeding].)

## DISPOSITION

The judgment is affirmed.  Respondent is to recover her costs on appeal but her motion for sanctions is denied.

TO BE PUBLISHED.


CHANEY, Acting P. J.


We concur:



JOHNSON, J.



WILEY, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.