Filed 3/11/16  Meida v. Maida CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ELIAN MEIDA, | D069090 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVVS1101947) |
| MUNEM MAIDA et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of San Bernardino County, John M. Pacheco, Judge.  Affirmed.


Frank P. Cuykendall for Plaintiff and Appellant.

Carroll Gilbert & Bachor and Guy J. Gilbert for Defendants and Respondents.

During trial of their respective claims, the parties in this property and business dispute stated, in open court, that they had reached a global settlement.  The settlement involved two elements: an agreement that, following an appraisal process, plaintiff and appellant Elian Meida would sell his interest in jointly held assets to defendants and

respondents Munem Maida and Fadi Ballat (collectively defendants), and an agreement that, although the amount was undisclosed at the time the settlement was reached, they would pay Meida $800,000 in unpaid dividends from the disputed businesses. Following the parties' agreement on the record to the terms of the settlement agreement, the trial court retained jurisdiction under Code of Civil Procedure[1] section 664.6.[2]

Meida failed to timely obtain an appraisal, as required by the global settlement agreement. Maida and Ballat did retain an appraiser who did provide an appraisal within the four-month period required under the settlement agreement. Maida and Ballat made two motions to enforce the settlement agreement. The first motion was limited to a request that Meida be compelled to transfer his interest in the assets at the price determined by Maida and Ballat's appraiser. The trial court denied the motion without prejudice because defendants' motion had not accounted for their obligation to pay Meida for the unpaid dividends. Defendants' second motion was granted because Maida and Ballat agreed to pay Meida the $800,000 in unpaid dividends he asserted was an element, albeit previously undisclosed, of the global settlement agreement.

---

[1]    All further statutory references are to the Code of Civil Procedure.

[2]    Section 664.6 provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

We affirm the trial court's order enforcing the settlement agreement. Because the trial court's order denying the first motion was made without prejudice, Maida and Ballat could properly make a second motion which cured the defect identified by the trial court. Meida's own statement to the effect defendants agreed to pay him $800,000 in unpaid dividends was sufficient evidence that the parties' agreement was definite and enforceable. Contrary to Meida's argument on appeal, further agreement as to the amount to be paid as dividends was not a condition of the appraisal process to which the parties' agreed.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties jointly owned undeveloped parcels of land and by way of interests in limited liability corporations, two gasoline stations, each of which included a convenience store and car wash. The undeveloped land and gasoline stations were located in Apple Valley, California.

Meida initiated the litigation by filing a complaint against Maida and Ballat in which he alleged a breach of fiduciary duty, among other causes of action, growing out of the failure of Maida and Ballat to pay him dividends earned by the gas stations after January 2010. The gas stations were operated by Maida and Ballat. Maida filed a cross-complaint against Meida in which he alleged Meida had failed to pay of his portion of mortgage obligations and development costs associated with plans to improve the undeveloped parcels.

3

Trial commenced on January 28, 2013. During a break on the first day of trial of their claims, the parties met privately, without counsel. Following their meeting, counsel advised the trial court the parties had reached a settlement of their claims. Counsel set forth the terms of the settlement on the record:

1) The two businesses and the land the parties owned would be subject to an appraisal; Meida would appoint one appraiser, and Maida and Ballat would appoint a second appraiser. The parties agreed the appraisals would be completed within four months. The parties would then be bound by an average of the two appraisals.

2) Maida would have the right to purchase Meida's interest in the businesses, at the appraised value, within 60 days of the appraisal; in addition, a third party, Maida Maida, (aka Mark Maida), would have the right to purchase from Meida a 16.5 percent interest in one of the undeveloped parcels at its appraised value. If Maida Maida made the purchase, Meida's interest in the parcel would be reduced to 33 percent. If, after 60 days, Maida did not buy Meida's interests in the businesses and subject parcels, Meida would buy defendants' interests in all the assets at the appraised values.

3) Meida's counsel stated that with respect to the three years' of dividends: "there's been an agreement reached between the parties that those amounts would be paid, the specific terms of which would be undisclosed in the settlement agreement, which is why we asked the court to maintain jurisdiction over this case."

Following counsel's recitation of the agreement on the record, Meida stated he agreed to the terms as described by counsel. The trial court then expressly retained jurisdiction under Code of Civil Procedure section 664.6.

Within four months, Maida and Ballat obtained the contemplated appraisal and gave Meida notice of it; Meida did not provide Maida and Ballat with an appraisal within the four-month period required under the terms of the settlement. Shortly thereafter, Maida and Ballat moved to enforce the asset transfer provisions of the settlement and compel Meida to sell his interests for the amounts set forth in their appraisal. Meida opposed the motion because he argued that it did not include any provision with respect to payment to him of the agreed dividends. As part of his opposition, Meida submitted a declaration, which in pertinent part stated: "During our settlement discussions on January 28, 2013, I told each Defendant that I would be satisfied with $800,000 to resolve the case regarding unpaid dividends. Defendants promised that they would satisfy my expectations and told me not to worry[.] I understood their assurances that they would satisfy my expectations and told me not to worry. . . . I understood their assurances that they would satisfy my expectations. . . . [¶] I made it clear to each Defendant that I was only willing to entertain a global settlement upon payment of the dividends that I had not received for over three years along the lines of my expectations of $800,000. Each Defendant assured me that they would pay me the dividends if I would agree to sell my interests and portions of interest in land we jointly owned. Thus, I agreed to the global settlement."

5

The trial court denied the motion to enforce the settlement and stated: "Defendants' motion fails to address adequately the dividends issue. A review of the record demonstrates that the issue of the payment of dividends was a material term of the settlement and was not a minor or separable issue. With its motion, defendant did not present any evidence regarding the dividends payment or discuss this terms of the settlement agreement."

On February 19, 2014, Maida and Ballat filed a second motion to enforce the settlement. The second motion addressed the dividends issue. In declarations they submitted in support of their motion, Maida and Ballat stated that they had agreed to pay Meida $800,000 in dividends and that they were ready, willing and able to pay Meida that amount plus the approximate $900,000 appraised value of Meida's interest in the jointly held assets.

The trial court granted Maida and Ballat's second motion and ordered that Meida transfer his interests upon payment of $1.7 million. Meida failed to comply with the trial court's order, and the trial court appointed a receiver who effected the transfer. Meida filed a timely notice of appeal.[3]

---

[3]    We note that at the time of oral argument, the parties represented to the court that Meida has taken proceeds of the transfer executed by the receiver. Because we affirm, we have not asked the parties to brief the question of whether receiving benefits of the challenged judgment results in waiver of Meida's right to appeal. (See *Lee v. Brown* (1976) 18 Cal.3d 110, 114.)

6

DISCUSSION

I

"In ruling on a motion to enter judgment [under section 664.6] the trial court acts as the trier of fact, determining whether the parties entered into a valid and binding settlement.  [Citation.]  Trial judges may consider oral testimony or may determine the motion upon declarations alone.  [Citation.]  When the same judge hears the settlement and the motion to enter judgment on the settlement, he or she may consult his memory. [Citation.]  The standard of review on appeal is whether substantial evidence exists to support the trial court's ruling.  [Citation.]"  (*Terry v. Conlan* (2005) 131 Cal.App.4th 1445, 1454; see *Fiore v. Alvord* (1985) 182 Cal.App.3d 561, 563.)

II

In his first argument on appeal, Meida claims that, because the trial court had denied Maida's first motion to enforce the settlement, Maida could not make a new motion to enforce the settlement without meeting the requirements of section 1008, which, among other matters, requires that a motion for reconsideration be supported by new facts or circumstances.  We reject this argument for two reasons.

The trial court's order denying the first motion to enforce the settlement was expressly made "without prejudice."  As Maida and Ballat point out, an order denying relief "without prejudice" permits the initially unsuccessful litigant to renew his or her request for relief at a later time when, for whatever reason, the grounds for denying relief no longer exist.  (*Farber v. Bay View Terrace Homeowners Assn.* (2006) 141 Cal.App.4th

7

1007, 1015; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 9:340.)

Moreover, even were new facts or circumstances necessary to support Maida and Ballat's second motion, the record shows that such facts and circumstances did arise after the time of the first motion. At the time they made the first motion, Maida and Ballat did not have any written concession from Meida with respect to the amount Meida would be paid in dividends. Meida's response to the first motion, in which he stated that he expected $800,000 in dividends, and Maida and Ballat's agreement with him and stated willingness to pay that amount, were new material facts or circumstances that would support a motion for reconsideration. (See *Film Packages v. Brandywine Film Productions, Ltd.* (1987) 193 Cal.App.3d 824, 827 [new depositions that simply elaborated on declarations and evidence submitted in support of earlier unsuccessful motion sufficiently different to support second motion].)

III

In his second argument on appeal, Meida contends the settlement agreement was not enforceable because it was not definite with respect to the amount Maida and Ballat would be paid on his dividend claim. The record conclusively refutes this contention.

"A settlement is enforceable so long as it is 'sufficiently certain to make the precise act which is to be done clearly ascertainable.' " (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1301.) The statement Meida made on the record in opposing the first motion—to the effect he expected $800,000—and Maida and

8

Ballat's statements to the effect they had agreed to pay him that amount, are sufficient to show the existence of an enforceable agreement. By way of Meida's statement and Maida and Ballat's agreement, there was ample evidence of a meeting of the minds with respect to a definite amount: $800,000.

## IV

In his final argument, Meida contends no valid appraisal could be made by either party until the parties had agreed to the amount of dividends. This argument is predicated on Meida's erroneous contention the parties had not in fact agreed that he would be paid $800,000 as compensation for the unpaid dividends. However, the settlement as represented to the trial court, at the time it was accepted by the parties and the trial court, expressly provided that the parties had reached an agreement on the dividends issue but did not wish to disclose its terms. This fact was corroborated in the declaration Meida submitted in opposition to the first motion to enforce the judgment and by Maida's and Ballat's declarations in support of their second motion, which showed that the parties agreed Meida would be paid $800,000 in unpaid dividends. Thus, there was no need for any further agreement with respect to the unpaid dividends, and Meida was free to ask that his appraiser consider the dividend payment in making his appraisal of the business.

Meida's final argument is also based on his faulty contention that the $800,000 in dividends represented otherwise unreported income and, as such, would have some material bearing on an appraiser's valuation of the businesses. As Maida and Ballat's appraiser noted, her appraisal was based on her evaluation of the reported and recorded

9

income of the businesses. Because of the highly regulated and taxed nature of the businesses, she doubted there was any unreported income; moreover, she believed that even if the dividends paid to Maida represented in whole or in part unreported income, as Meida asserts, a reasonable purchaser would discount it substantially because of its inherent uncertainty and durability.

In sum, there was no basis upon which to require a further agreement as to the amount of the dividends to be paid to Meida before enforcing the settlement agreement.

## DISPOSITION

The trial court's entry of judgment enforcing the settlement agreement is affirmed. Maida and Ballat to recover their costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

HALLER, J.

10